Clinton DIXON, Claimant–Appellant,

v.

STOAM INDUSTRIES, INC.,
Employer–Respondent,

and

Division of Employment Security,
Respondent.

No. 27407.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 26, 2007.

Clinton Dixon, pro se.

Marilyn Green and Cynthia Quetsch, Jefferson City, MO, for respondent Missouri Division of Employment Security.

GARY W. LYNCH, Judge.

Appellant Clinton Dixon ("Claimant"), formerly employed by Respondent Stoam Industries, L.L.C. ("Employer"), appealed a deputy's determination that he was disqualified for waiting-week credit and benefits, pursuant to § 288.050.2,[1] for the reason that he "was discharged because he was not performing the assigned duties[.]" Following review, the Appeals Tribunal concluded that Claimant's refusal to follow a supervisor's directive constituted misconduct connected with his work, and the deputy's determination was affirmed. Claimant appealed to the Labor and Industrial Relations Commission ("Commission"), which adopted and affirmed the decision of the Appeals Tribunal. Claimant now appeals the Commission's decision claiming "there is insufficient evidence of 'misconduct' in the record to support the commission's decision." We affirm.

### 1) *Timeliness of Claimant's Notice of Appeal*

Claimant filed a *pro se* notice of appeal to this Court. Respondent Division of Employment Security ("Division") moved to dismiss the appeal, alleging that Claimant's notice of appeal was not timely filed. Because Claimant's notice of appeal was received by the Commission without any United States Postal Service postmark, this Court remanded the case to the Commission, directing the Commission to hold a hearing and determine the date on which Claimant's notice of appeal was "deemed" filed. *Dixon v. Stoam Industries, Inc.,* No. 27407, 2006 WL 2045868, at *4, 216 S.W.3d 684, 686 (Mo.App. S.D. 2006); *see also Powell v. Catholic Charities of St. Louis,* 202 S.W.3d 55, 56 (Mo.App. E.D. 2006). This appeal was held in abeyance pending the Commission's certification to this Court of the filing date of Claimant's notice of appeal.

Following a hearing, the Commission certified to this Court that Claimant's notice of appeal was filed December 6, 2005. As the Commission's decision was mailed November 9, 2005, we determine that Claimant's notice of appeal was timely filed. §§ 288.210 and 288.200.2, RSMo 2000; *Johnson v. Climate Express, Inc.,* 202 S.W.3d 95 (Mo.App.2006). The Division's motion to dismiss is denied. We turn now to the merits of Claimant's appeal.

### 2) *Factual and Procedural Background*

Employer manufactures preassembled wall panels for residential and commercial construction. Claimant was employed in the manufacturing sector of the business. On the morning of July 15, 2005, while Claimant was assisting a co-worker, he was approached by Steve Edwards, who handed Claimant blueprints and asked Claimant to "move over and do a different process." Claimant told Edwards he was working on something else and he "wasn't going to stop what [he] was doing and go over there and do that the rest of the night." Edwards told Claimant "to get [his] stuff and leave." Claimant was immediately discharged.

Claimant filed a claim for unemployment benefits. Employer protested his

---

1. References to statutes are to RSMo Cum.     Supp.2005, unless otherwise indicated.

claim, contending that Claimant "was terminated for refusing to follow orders from his supervisor and insubordination." The Division determined that Claimant was disqualified for waiting-week credit and benefits, for the reason that Claimant "was discharged because he was not performing the assigned duties. The claimant had been directed to return to work by his supervisor."

Claimant appealed the deputy's determination, which was subsequently affirmed by the Appeals Tribunal. It concluded that Claimant was discharged for misconduct connected with his work, in that he "refused to follow a directive of a supervisor" whom Claimant "knew or should have known ... had the authority to direct his activities." Following review by the Commission, the decision of the Appeals Tribunal was adopted and affirmed. This appeal followed.

### 3) *Standard of Review*

Section 288.210 governs our review of the Commission's decision. *Hoover v. Community Blood Center*, 153 S.W.3d 9, 12 (Mo.App.2005). This section provides that this Court may reverse, modify, set aside, or remand a decision by the Commission only on the following grounds:

(1) That the Commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Section 288.210, RSMo 2000.

■ An appellate court examines the evidence in the record as a whole to determine whether competent and substantial evidence supports the Commission's deci-

sion. *Scrivener Oil Co., Inc. v. Div. of Employment Sec.*, 184 S.W.3d 635, 638 (Mo.App.2006). "We will not substitute our own judgment for that of the Commission's regarding its evaluation of the evidence relative to its findings." *Id.* However, "we are not bound by the Commission's conclusions of law or its application of the law to the facts." *Id.*

### 4) *Discussion*

■ Pursuant to § 288.050.2, an individual discharged for misconduct in connection with work may be denied waiting-week credit from four to sixteen weeks of unemployment benefits. *Dameron v. Drury Inns, Inc.*, 190 S.W.3d 508, 511 (Mo. App.2006). Denial of benefits depends "upon the seriousness of the misconduct as determined by the deputy according to the circumstances in each case[.]" *Croy v. Div. of Employment Sec.*, 187 S.W.3d 888, 892 (Mo.App.2006). "The determination of misconduct connected with work is a question of law that we review *de novo.*" *Rapid Roberts, Inc. v. Potter*, 125 S.W.3d 395, 397 (Mo.App.2004). Whether Claimant's conduct is considered misconduct in connection with his work is a legal question to which we do not defer to the Commission's determinations. *Scrivener Oil Co., Inc.*, 184 S.W.3d at 640.

Section 288.030.1(24) defines "misconduct" as:

[ (1) ] an act of wanton or willful disregard of the employer's interest, [ (2) ] a deliberate violation of the employer's rules, [ (3) ] a disregard of standards of behavior which the employer has the right to expect of his or her employee, or [ (4) ] negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the em-

ployee's duties and obligations to the employer[.]

*See also Dixon v. Div. of Employment Sec.*, 106 S.W.3d 536, 541 (Mo.App.2003).

■ Each definition set out above requires "a showing of culpability on the part of the employee[.]" *Id.* Each definition also requires "that the employee willfully violate the rules or standards of the employer." *Hoover v. Community Blood Center*, 153 S.W.3d 9, 13 (Mo.App.2005) (quoting *Dolgencorp, Inc. v. Zatorski*, 134 S.W.3d 813, 818 (Mo.App.2004)).

■ " 'Willful misconduct is established when action or inaction by the claimant amounts to conscious disregard of the interests of the employer or constitutes behavior contrary to that which an employer has a right to expect from an employee.' " *Dixon*, 106 S.W.3d at 542 (quoting *Hurlbut v. Labor & Industrial Relations Comm'n*, 761 S.W.2d 282, 285 (Mo.App.1988)). "The context of the term 'disregard' in the definition of misconduct indicates … that disregard of the standards of behavior means 'an intentional slight.' " *Dixon*, 106 S.W.3d at 541. *See also Dameron*, 190 S.W.3d at 511 ("The violations must be intended.")

Our research of Missouri cases has revealed no reported opinions in which the facts are on point with those in this appeal—where an employee refused to comply with a reasonable work directive from a supervisor—and we find no citation to any applicable precedent in the parties' briefs. Absent such guidance in determining whether Claimant's behavior constitutes misconduct, we have turned to labor and employment cases involving allegations of "insubordination." Missouri case law defines "insubordination" as "a willful disregard of express or implied direction or a defiant attitude." *McClellon v. Gage*, 770 S.W.2d 466, 469 (Mo.App.1989). *See also Hellmann v. Union School Dist.*, 170 S.W.3d 52, 66 n. 5 (Mo.App.2005). " '[R]ebellious', 'mutinous', and 'disobedient' are often used as definitions or synonyms of 'insubordinate'." *McClellon*, 770 S.W.2d at 469.

■ We also consider a related rule of law, that " '[i]n every contract of employment[,] it is implied that the employee will obey the lawful and reasonable rules, orders and instructions of the employer[.]' " *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239, 244 (Mo.App.1993). Here, there was uncontroverted testimony that the task Edwards asked Claimant to perform was one within the scope of Claimant's employment. There are no allegations or supporting evidence in the record, nor do we find, that the task Edwards requested of Claimant was unlawful.

■ Conduct which "disregards the standard of behavior that an employer has a right to expect" constitutes misconduct. *Simpson Sheet Metal, Inc. v. Labor & Indus. Relations Comm'n*, 901 S.W.2d 312, 314 (Mo.App.1995). Therefore, with these principles to guide us, we find that an employee's refusal to comply with a lawful and reasonable directive from a supervisor constitutes misconduct as that term is defined by § 288.030.1(24).

■ When an employer claims that a claimant was discharged for misconduct connected with work, the burden is on the employer to prove by substantial and competent evidence that claimant was discharged for "misconduct." *Dameron*, 190 S.W.3d at 511. "Employer must show[,] by a preponderance of the evidence, Claimant's willful violation of Employer's rules." *Scrivener Oil Co., Inc.*, 184 S.W.3d at 641. Claimant contends there is not sufficient evidence of misconduct in the record to support the Commission's decision. We disagree.

By his own admissions, Claimant did not follow Edwards' directive.[2] However, Claimant maintained that Edwards was not his supervisor. When asked by the referee whether Edwards was his supervisor, Claimant responded: "Well I never considered him a supervisor. Maybe in his own mind. I just thought that he was the boss's son-in-law." Claimant later testified: "I guess he was a supervisor[,] but everybody but me realized it or considered him ... a supervisor."

Employer's representative, Bill Nystrom, testified that Claimant's "immediate supervisor" was Edwards and that Claimant was terminated "[f]or refusing to obey the instructions of the supervisor." When Nystrom was questioned about Claimant's asserted lack of knowledge regarding Edward's position as his supervisor, Nystrom stated that Edwards had been "running that cull manufacturing operation for a period of probably close to two months[,]" and that Claimant had been previously instructed, specifically by Steve Barton, who was "head of manufacturing," to follow the directions given by Edwards.

Steve Barton, Employer's vice-president of operations, testified that Edwards was Claimant's supervisor, and he had informed the employees, including Claimant, that Edwards was their supervisor.

The Appeals Tribunal concluded, *inter alia:* "The evidence further shows that the claimant knew or should have known that this person had the authority to direct his activities." Deference is accorded to the Commission's determinations of weight of the evidence and witness credibility. *Scrivener Oil Co., Inc.,* 184 S.W.3d at 638. When there is a conflict in the evidence presented, the Commission's determination as to the facts is conclusive. *Id.* at 639. Here, the Commission found that Claimant knew or should have known that Edwards was his supervisor. The Commission's finding on this issue, viewing the record as a whole, is sufficiently supported by the evidence. Appellant's point is denied.

### 5) *Decision*

The Commission's decision is affirmed.

BATES, P.J., C.J., and GARRISON, J., concur.

---

2. When asked at the administrative hearing what occurred when Edwards approached him with blueprints and wanted Claimant to work on something other than what he was already doing, Claimant testified: "I wasn't going to stop what I was doing and go over there and do that the rest of the night[,]" and "I didn't want to[.]"