Matthew **FRISELLA**, Respondent,

v.

**DEUSTER ELECTRIC, INC.,** Appellant,

and

**Division of Employment Security,** Respondent.

No. ED 91182.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 18, 2008.

Deborah K. Deuster, The Duester Law Firm LLC, St. Louis, for Appellant.

Matthew Frisella, St. Louis, pro se.

Marilyn G. Green, Department of Labor and Industrial Relations, Jefferson City, for Division of Employment Security.

KURT S. ODENWALD, Presiding Judge.

## Introduction

Deuster Electric, Inc. (Employer) appeals from the order of the Labor and Industrial Relations Commission (the Commission) affirming the decision of the Division of Employment Security Appeals Tribunal granting employee Matthew Frisella (Claimant) unemployment compensation benefits. The Commission found Claimant was not disqualified from benefits because he was not terminated from his employment for misconduct connected with his work. We affirm.

## Background

Claimant began work as an apprentice electrician with Employer in August 2007. Less than two months later, on September 18, 2007, he was terminated from his employment. Claimant filed an application for unemployment benefits on September 30, 2007. Employer filed a Letter of Protest with the Division of Employment Security (DES), indicating Claimant "did not complete his 90 day probationary period," that he was slow with his work, and did not grasp the tasks to be completed. The protest letter also stated that Employer's president, Mark Deuster, left Claimant on a job with specific instructions, which Claimant did not follow.

The DES Deputy's Determination Concerning Claim for Benefits (Deputy's Determination) was issued on October 26, 2007. The deputy found Claimant was not disqualified from benefits because his discharge was not for misconduct connected with work. The deputy reasoned that Claimant was discharged because his employer was dissatisfied with his work performance, and that Claimant was working to the best of his ability.

Employer appealed the Deputy's Determination and a hearing was held with the DES Appeals Tribunal on December 27, 2007. Claimant was not present for the hearing, though Mr. Deuster appeared on behalf of his company. Mr. Deuster testified that Claimant was discharged because he failed to follow instructions and failed to call a supervisor when he experienced problems. Mr. Deuster described two incidents that occurred within a period of a week and a half. The first involved Mr. Deuster taking Claimant to a job site and giving him instructions, but when Mr. Deuster returned later that afternoon, Claimant "had done nothing that [Mr. Deuster] asked him." The second incident occurred on September 17, 2007, when Claimant was assigned to hang light fixtures on a residential job. Mr. Deuster arrived at the job site the next morning to find that Claimant had not installed many of the light fixtures. Claimant explained that the carpet layer was in his way, preventing him from completing the installations. Mr. Deuster testified that he was displeased with Claimant's response because he had previously explained to all employees, including Claimant, that if another trade was in their way and prevented them from working, the employees were to call and inform a supervisor so that the problem could be resolved. Claimant did not do so. At that time, Mr. Deuster terminated Claimant's employment.

After the hearing, the Appeals Tribunal issued its decision finding that Claimant's failure to call his supervisor regarding Claimant's difficulties with installing the light fixtures was poor judgment, but did not rise to the level of misconduct. The Appeals Tribunal found Claimant was discharged, but not for misconduct connected with his work.

Employer appealed the Appeals Tribunal's decision to the Commission. On March 12, 2008, the Commission issued its order affirming the Appeals Tribunal's decision, noting the decision was "fully supported by the competent and substantial evidence on the whole record and [ ] in accordance with the relevant provisions of the Missouri Employment Security Law." The Commission adopted the decision of the Appeals Tribunal as its own. This appeal follows.

## Point on Appeal

Employer alleges on appeal that the Commission erred in finding Claimant was not disqualified from benefits because the facts found by the Commission are not supported by competent and substantial

evidence. More specifically, Employer argues that Claimant failed to follow the directive of his supervisor on more than one occasion, despite proper warnings, and that evidence of Claimant's disobedience of Employer's directive was uncontroverted. Employer further argues that the Commission omitted one incident of disobedience from its findings, and notes that Claimant failed to appear or testify at the Appeals Tribunal hearing. Employer alleges that the record is therefore devoid of any substantial or competent evidence to support a finding that Claimant's conduct was the result of poor judgment rather than misconduct in failing to follow his supervisor's directions.

### Standard of Review

Article 5, Section 18 of the Missouri Constitution and Section 288.210, RSMo 2000 [1] set forth the standard for reviewing decisions of the Commission in unemployment compensation cases. On appeal, this Court

> may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Section 288.210.

While deference is given to the Commission's findings of facts and we will find factual findings conclusive if they are "supported by competent and substantial evidence," we do not "defer to the Commis-

sion's conclusions of law or application of law to the facts." Section 288.210; *Lindsey v. Univ. of Mo.*, 254 S.W.3d 168, 170 (Mo.App. W.D.2008). "Where the Commission's decision involves a question of law, we review the issue independently." *Miller v. Kansas City Station Corp.*, 996 S.W.2d 120, 122 (Mo.App. W.D.1999). Whether "the Commission's findings support the conclusion that an employee was guilty of misconduct is a question of law." *Id.*

Because the purpose of Missouri's unemployment compensation act is to provide benefits for those unemployed through no fault of their own, we review the disqualifying provisions in the act strictly and "against the disallowance of benefits to unemployed but available workers." *Lindsey*, 254 S.W.3d at 171.

### ·Discussion

Employer argues Claimant should be denied unemployment compensation benefits because he was discharged for misconduct connected with his work. We disagree.

### Misconduct vs. Work Performance

Section 288.050(2) provides for the disqualification of an employee from unemployment compensation benefits where there is "misconduct connected with the claimant's work." "Misconduct" is defined in Section 288.030(23) as

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial

---

**1.** All further statutory references are to RSMo 2000, unless otherwise indicated.

disregard of the employer's interest or of the employee's duties and obligations to the employer.

■ "Work related misconduct" must involve a willful violation of the rules or standards of the employer. *Murphy v. Aaron's Auto. Prods.*, 232 S.W.3d 616, 621 (Mo.App. S.D. 2007); *Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13 (Mo.App. W.D. 2005). Without evidence that a claimant "deliberately or purposefully erred, he cannot properly be found to have committed an act of misconduct." *Murphy*, 232 S.W.3d at 621.

■ "It is essential to keep in mind that whether an employer has solid grounds to terminate an employee is not the same issue as whether the former employee qualifies for compensation." *Miller*, 996 S.W.2d at 124. "There is a vast distinction between the violation of a rule of an employer that would justify the discharge of the employee and a violation of such rule that would warrant a determination of misconduct connected with the employee's employment so as to disqualify him or her for unemployment compensation benefits." *Hoover*, 153 S.W.3d at 13 (internal quotations omitted).

■ While generally, an employee "may be terminated for poor judgment and irresponsible actions," "such actions are generally not a ground for denying compensation." *Miller*, 996 S.W.2d at 124. "Poor workmanship, lack of judgment, or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct." *Murphy*, 232 S.W.3d at 621 (internal quotations omitted). In order to find "misconduct," proof that the claimant "willfully violated the rules or standards of employer" and that his "actions were not simply the result of poor workmanship, lack of judgment, or an inability to do the job" is required by a preponderance of the evidence. *Id.*

■ Generally an employee bears the burden of proving he or she is entitled to unemployment benefits. *Hoover*, 153 S.W.3d at 13. However, when an employer claims an employee "was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work." *Miller*, 996 S.W.2d at 124. Thus, Employer bore the burden of proving by a preponderance of the evidence that Claimant "willfully violated the rules or standards of the employer" and that his actions "were not simply the result of poor workmanship, lack of judgment, or an inability to do the job." *See Hoover*, 153 S.W.3d at 13.

Employer presented evidence at the Appeals Tribunal that Claimant failed to perform the tasks assigned on September 11, 2007, and again failed to follow instructions to call and report a situation at the job site on September 17, 2007. Both of these instances occurred after a company-wide meeting during which Mr. Deuster explained to the employees that they were to call and report any problems at a job site that might impede their work and to follow tasks as assigned on projects. This Court must examine whether, based on this evidence, the Commission's legal finding that Claimant's conduct did not constitute misconduct connected with his work was sufficiently supported by the evidence. We find the Commission's finding was properly supported by the evidence.

■ Employer never alleged, nor proved, Claimant willfully committed the alleged errors or omissions. Employer did not allege Claimant was lazy or that he willfully refused to do a job he was instructed to do, but only argued Claimant was terminated for inadequate job performance. Nothing indicates these errors were anything more than poor workmanship or lack of judgment. While these

mistakes may have justified Employer's decision to terminate Claimant's employment, we find that Claimant's acts do not rise to the level of misconduct for purposes of the denial of unemployment compensation eligibility. Absent evidence that Claimant deliberately or purposefully committed the mistakes, he cannot be found to have committed an act of misconduct. *See Hoover*, 153 S.W.3d at 14.

*Claimant's Failure to Testify*

Employer argues that Claimant's failure to testify at the Appeals Tribunal hearing leaves the Commission with no evidence to support its finding that Claimant's conduct amounted to "poor judgment" rather than misconduct. Employer argues that the only evidence before the Appeals Tribunal was Mr. Deuster's testimony of the company's policies, and Claimant's violation of those policies. Employer proceeds on the mistaken assumption that from the evidence presented, the only reasonable conclusion that could be reached is that Claimant's failure to adhere to company policy was due to his willful and intentional act of disregarding the policy and disobeying Mr. Deuster's direction. Contrary to Employer's argument, the evidence does not mandate this conclusion. The evidence of Claimant's actions presented by Employer at the hearing could reasonably be construed as a lack of judgment and poor performance, and does not mandate a finding that Claimant's actions were misconduct connected with his work.

Employer "bears the burden of proving by substantial and competent evidence that [Claimant] was discharged for 'misconduct' connected to work." *White v. Wackenhut Corp.*, 208 S.W.3d 916, 919 (Mo.App. E.D.2006). In order to prove misconduct Employer must show Claimant willfully violated Employer's rules or standards. *Id.* at 918. "[T]here must be a

finding of some intent on the part of the discharged employee" in order to find misconduct. *Bostic v. Spherion Atlantic Workforce*, 216 S.W.3d 723, 725 (Mo.App. W.D.2007); *see also Murphy*, 232 S.W.3d at 621 (To disqualify a claimant for benefits based on misconduct, "a claimant's work-related misconduct must involve some form of willfulness.")

The evidence presented to the Appeals Tribunal is clear that Claimant was given specific tasks by Employer and failed to perform those tasks to the satisfaction of Employer. However, there was no evidence presented that the failure to complete the work appropriately was intentional or willful. While Mr. Deuster testified that Claimant did not complete hanging the light fixtures as instructed, Mr. Deuster also testified that Claimant reported to him that the reason the hanging of the light fixtures was not completed was because the carpet layers were in the way and Claimant had to wait until they were finished in each room. Claimant's actions, therefore, in failing to complete the task as assigned reasonably could be viewed as unintentional and not the result of willful disregard for the rules, but instead as simply poor judgment, poor performance, or inability to do the job. *See Murphy*, 232 S.W.3d at 621 ("Poor workmanship, lack of judgment, or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct.")

Furthermore, Mr. Deuster testified Claimant was discharged for "lack of following instructions and not calling a supervisor when he ran into any problems." Mr. Deuster also testified that when he fired Claimant he told Claimant "this really isn't going to work, you know, based on our interview and the experience you said you had, you know, it's just not going to work, I'm going to need to let you go."

Nowhere in this testimony does Mr. Deuster allege Claimant's actions rose to the level of intentional misconduct. While the evidence presented could justify Claimant's discharge, the evidence did not mandate a finding by the Commission that Claimant's conduct was a "willful, wanton, or deliberate violation" of any rule, which would warrant a determination of misconduct disqualifying Claimant from unemployment compensation benefits.

The record before us contains sufficient and competent evidence to support the Commission's award of benefits. Through the testimony presented by Mr. Deuster, competent and substantial evidence was presented that Claimant's conduct amounted to poor judgment, and not misconduct sufficient to disqualify him from unemployment compensation benefits. While Employer presented evidence that may have supported a determination that Claimant was terminated for misconduct connected with his work, the Commission was free to reject the employer's contentions and weigh the evidence in favor of Claimant. For these reasons, given our review of the entire record, we find that there exists substantial and competent evidence to support the Commission's adoption of the Appeals Tribunal's determination that Claimant's conduct was "poor judgment," and that Claimant was not discharged for misconduct associated with his work that would have disqualified him for unemployment compensation benefits. Employer's appeal is denied.

### Conclusion

We affirm the judgment of the Commission.

GLENN A. NORTON and PATRICIA L. COHEN, JJ., Concur.