Kenneth FREEMAN, Claimant–
Appellant,

v.

GARY GLASS & MIRROR,
L.L.C., Employer,

and

Division of Employment Security,
Respondent.

No. SD 29104.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 2, 2009.

Richard D. Bender, Springfield, MO, for Appellant.

Rachel M. Lewis, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Chief Judge.

Kenneth Freeman ("Claimant") appeals the decision of the Labor and Industrial Relations Commission ("Commission") denying him unemployment compensation benefits. Specifically, Claimant argues that his former employer failed to produce substantial or competent evidence to support its contention that Claimant was discharged for misconduct connected with his work. We disagree and affirm the decision of the Commission.

### Factual and Procedural Background

Gary Jaycox is the owner of Gary Glass & Mirror, L.L.C. ("Employer"), located in Kaiser, Missouri. In March of 2004, Employer hired Claimant, who had installed glass for a living for over twenty years, to install residential and commercial glass and mirror products. While Claimant's work was satisfactory for approximately the first three and one-half years of his employment, around October 2007, Claimant began dramatically slowing his work pace. Shortly thereafter, a customer complained to Jaycox that Claimant was not listening to what he wanted done on a job and was constantly trying "to figure out a way that [sic] to not do that." Additionally, one of Employer's contractors complained that Claimant was pushing the installation of semi-frame shower doors, which Jaycox had explicitly told Claimant not to do.

In November 2007, Claimant began trying to get a job at a competing glass company, Camdenton Glass.[1] Around that same time or shortly afterward, Claimant was helping another employee install a store-front window in Camdenton. After being told to use three-inch screws on the installation, Claimant instead used two-

---

1. Employer was unaware of this development until immediately prior to the administrative hearing.

inch screws, which are easier to install, but do not provide a proper and safe installation. At that same job in Camdenton, Claimant installed a door frame; when other of Employer's employees returned to place the pane of glass in the frame, the door "about fell out on the ground" because Claimant had used only one screw on one side, rather than two screws that standard practice required.

In January 2008, Claimant went to a potential customer to perform an estimate on a mirror replacement. The mirror needed a hole cut in it to fit around a receptacle-like object in the wall, and Claimant told the customer that Employer could not do such a job. In fact, Employer does do such work, and Claimant had been involved in such jobs in the past. At around the same time, Claimant was instructed to double-check the measurements for a particular mirror to be installed at another location, but he failed to do so. After other employees took the mirror to the worksite to be installed, they discovered that it did not fit.

Employer discharged Claimant in a telephone conversation on January 16, 2008. Employer told Claimant he was being discharged "because he was telling the people that—that we couldn't do the work and then jobs that he had messed up on." Claimant filed for unemployment benefits that same day, and a deputy thereafter determined that Claimant had been discharged from Employer for misconduct connected with work and was, therefore, ineligible to receive unemployment benefits. Claimant appealed to the Appeals Tribunal, and a hearing was held via telephone conference before an administrative hearing officer. Jaycox testified at the hearing as Employer's representative, as did Kent Hodel, who was another of Employer's employees. Claimant testified on his own behalf. While Jaycox and Hodel relayed the above sequence of events, Claimant denied that any of the complaints or incidents as testified to by Jaycox and Hodel ever happened.

The Appeals Tribunal affirmed the deputy's previous determination that Claimant was disqualified from receiving benefits because he was discharged for misconduct connected with work as provided in sections 288.030.1(23) and 288.050.2, RSMo Cum.Supp.2006.[2] In its decision, the Tribunal found that Claimant was discharged "for reasons that included repeated substandard or unsafe installation of product, and not taking profitable work he and the company historically did." The Tribunal further found that "[t]he employer witnesses were more credible." The Tribunal concluded by stating that Employer "had a reasonable right to expect the claimant perform installations safely and properly, and not turn away profitable work." Claimant appealed the Tribunal's ruling to the Commission. The Commission affirmed the Tribunal's decision, adopting it as the decision of the Commission and stating that "it is fully supported by the competent and substantial evidence on the whole record and it is in accordance with [Missouri law]." This appeal followed.

### Standard of Review

Our review of the Commission's decision in an unemployment compensation case is governed by both Article 5, Section 18 of the Missouri Constitution and section 288.210[3] of the Missouri statutes. *Ragan v. Fulton State Hosp.*, 188 S.W.3d 473, 474 (Mo.App.2006). Pursuant to those authorities,

---

**2.** All references to sections 288.030 and 288.050 are to RSMo Cum.Supp.2006.

**3.** All statutory references are to RSMo 2000, unless otherwise indicated.

we may modify, reverse, remand for rehearing, or set aside the decision of the Commission only where: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the making of the award. *Ayers v. Sylvia Thompson Residence Center*, 211 S.W.3d 195, 197–98 (Mo.App.2007); section 288.210. Absent indications of fraud, the factual findings of the Commission are conclusive so long as they are supported by competent and substantial evidence. *Ragan*, 188 S.W.3d at 474; section 288.210. In determining whether competent and substantial evidence was presented, we examine the evidence in the record as a whole. *Scrivener Oil Co., Inc. v. Div. of Employment Sec.*, 184 S.W.3d 635, 638 (Mo.App.2006). We defer to the Commission on the resolution of conflicting evidence regarding a factual issue, the weighing of evidence, and the credibility of witnesses. *Burns v. Labor & Indus. Comm'n*, 845 S.W.2d 553, 554–55 (Mo. banc 1993); *Five Star Mfg., Inc. v. Tanksley*, 168 S.W.3d 719, 721 (Mo.App.2005).

 Notwithstanding this deference, this Court reviews questions of law *de novo*. *Dixon v. Div. of Employment Sec.*, 106 S.W.3d 536, 540 (Mo.App.2003). The issue of whether an employee's actions constitute misconduct related with work is a question of law, *Five Star Mfg., Inc.*, 168 S.W.3d at 721, and "we are not bound by the Commission's conclusions of law or its application of the law to the facts." *Scrivener Oil Co., Inc.*, 184 S.W.3d at 638.

### Discussion

Claimant presents one point for our review, contending that the Commission erred in determining that Claimant's discharge was due to misconduct connected with his work because Employer did not meet its burden of producing competent and substantial evidence demonstrating any misconduct. We disagree.

Section 288.050.2 disqualifies a claimant from receiving unemployment compensation benefits if that claimant has been discharged for misconduct connected with his work. Section 288.050.2. "Misconduct" is defined as

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest of the employee's duties and obligation to the employer[.]

Section 288.030.1(23).

 Although the burden of proving eligibility for unemployment compensation benefits initially lies with the claimant, once an employer alleges that the claimant was discharged for misconduct connected with work, the burden shifts and the employer must demonstrate such misconduct. *Croy v. Div. of Employment Sec.*, 187 S.W.3d 888, 892 (Mo.App.2006). In order to do so, the employer must show, by a preponderance of the evidence, that the claimant willfully violated the rules or standards of the employer or that the claimant knowingly acted against the employer's interest. *Id.*; *Dixon*, 106 S.W.3d at 541. "Poor workmanship, lack of judgment or the inability to do the job does not disqualify a claimant from receiving benefits on the basis of misconduct," *Powell v. Div. of Employment Sec.*, 669 S.W.2d 47, 51 (Mo.App.1984), and there is a distinction between the violation of an employer's

rule justifying the employee's discharge and the violation of an employer's rule that warrants a finding of misconduct connected to the employee's work. *Croy*, 187 S.W.3d at 892.

In the case at bar, Employer presented two witnesses who testified as to Claimant's actions at work. Jaycox, Employer's owner, related Claimant's decline in work product over the course of roughly four months after having performed satisfactorily for the preceding three and one-half years. Jaycox offered specific instances during this four-month period where Claimant's conduct was in direct conflict with Employer's interests or in direct disobedience of Employer's specific directions. Hodel corroborated some of those instances.

Claimant testified that there was no change whatsoever in his work habits, and that if there was a change, it was unintentional. Claimant denied that each of the instances of customer complaints, slow work pace, and failure to follow the directions of his superiors, as elicited by Employer's evidence, ever occurred. When asked about possible injuries or any other explanations for the marked shift in Claimant's work habits, Claimant offered no explanation, and again charged that Jaycox and Hodel were lying.

We must abide by the Commission's express finding, through the adoption of the decision of the Tribunal, that Employer's witnesses were more credible than Claimant, and we hold that the record, when viewed with that finding in mind, contains competent and substantial evidence that Claimant was discharged for misconduct connected to work in two ways.

First, according to Employer's witnesses, Claimant turned away business that he knew Employer could perform and that he himself had previously performed for Employer. This testimony was compe-tent and substantial evidence to show that Claimant intentionally turned away profitable business from the Employer, which is a "willful disregard of the employer's interest" and which is defined as misconduct by section 288.030.1(23).

Second, according to Employer's witnesses, Claimant disobeyed his superior on at least three occasions: first, when he continued to recommend the installation of semiframe shower doors after he had specifically been told not to do so; second, when he used two-inch screws on an installation job after he had specifically been told to use three-inch screws; and, third, when he failed to double-check the measurements on a mirror after he had been specifically instructed to do so. Coupled with Employer's evidence that Claimant had followed his superior's directions without any problems for the preceding three and one-half years and Claimant's testimony that he had no explanation for such a marked change in his work habits, there was competent and substantial evidence in the record to support a determination that Claimant's repeated failures to follow the specific directives of his superiors were intentional. Such conduct by the Claimant shows a "willful ... disregard of standards of behavior which the employer has the right to expect of his or her employee[,]" which is also defined as misconduct by section 288.030.1(23).

Indeed, this Court has previously held that a single instance of intentional disobedience of an employer's directive constitutes misconduct as defined by section 288.030(23). In *Dixon v. Stoam*, 216 S.W.3d 688 (Mo.App.2007), the claimant was told by a supervisor to stop what he was doing and help with another task. *Id.* at 691. The claimant responded that he was busy and was not going to do as he was told. *Id.* The supervisor immediately

fired the claimant, and the claimant's subsequent attempt to claim unemployment compensation benefits was denied. *Id.* at 691–92. On appeal, this Court held that the claimant's "refusal to comply with a lawful and reasonable directive from a supervisor constitutes misconduct as that term is defined by § 288.030.1(24)."[4] *Id.* at 693.

Admittedly, the Claimant here did not explicitly verbalize his intention not to follow his superior's directions as the claimant did in *Dixon. Id.* at 691. Nevertheless, Employer's testimony of Claimant's repeated failure to follow the Employer's specific directions, without any explanation, after demonstrating his ability to do so over a long period of time, speaks just as loudly about the willfulness of Claimant's actions as did the verbal refusal made by the claimant in *Dixon.*

Claimant cites us to *Berwin v. Lindenwood Female College,* 205 S.W.3d 291, 294–295 (Mo.App.2006) and *Hoover v. Cmty. Blood Center,* 153 S.W.3d 9, 13 (Mo. App.2005) for the proposition that poor workmanship, lack of judgment, or inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct. While both cases correctly state the law, neither lends Claimant here any support. In *Berwin,* unlike here, the decision of the Commission denying the claimant benefits was reversed because the factual findings of the claimant's conduct by the Commission were unsupported by the record. *Berwin,* 205 S.W.3d at 296. In *Hoover,* unlike here, the employer never alleged or proved that the claimant willfully committed any errors. *Hoover,* 153 S.W.3d at 14. The evidence of the willful nature of Claimant's conduct in the case at bar moves such conduct from the categories of poor workmanship, lack of judgment, and inability to do the job to the

level of misconduct, as defined by section 288.030.1(23).

Likewise, Claimant's citation to *White v. Wackenhut Corp.,* 208 S.W.3d 916, 917–919 (Mo.App.2006), provides him no relief. The claimant in *White* overslept and was late for work because of a malfunctioning alarm clock. *Id.* at 919. Like in *Hoover,* and unlike in the present case, the employer in *White* did not present any evidence that the claimant intentionally violated the employer's work policy. *Id*

Upon review of the whole record, the Commission's determination that Claimant was discharged for misconduct connected to his work was supported by competent and substantial evidence. Claimant's point is denied.

### Decision

The Commission's decision is affirmed.

PARRISH, and RAHMEYER, JJ., concur.

---

4. Section 288.030.1(24) is now subsection 23 in section 288.030.1, RSMo. Cum.Supp. 2006.