**David G. BUCKLEY, Claimant–Appellant,**

v.

**SAFELITE FULFILLMENT, INC., and Division of Employment Security, Respondents.**

**No. SD 29824.**

Missouri Court of Appeals, Southern District, Division Two.

Dec. 2, 2009.

Stacey R. Page, Springfield, for Appellant.

No appearance, for Respondents.

KELLY W. PARKER, Special Judge.

David G. Buckley ("Claimant") appeals the decision of the Labor and Industrial Relations Commission ("Commission") disqualifying him from receiving unemployment compensation benefits due to misconduct. In Claimant's sole point relied on, he contends the Commission's determination that he was discharged for misconduct is against the weight of the evidence. We agree and reverse.[1]

## Procedural and Factual Background

Claimant's claim for unemployment compensation benefits was initially determined by a deputy from the Missouri Division of Employment Security. The deputy determined Claimant was disqualified from receiving unemployment compensation benefits because Claimant was discharged by his employer for misconduct connected with work. According to the deputy, the reason for that determination was that the "Claimant was discharged because he failed to prime a pinchweld (sic) when he installed a windshield. This was part of his normal job duties." Claimant appealed the deputy's determination to an appeals tribunal. At the hearing before the appeals tribunal, Robert Toolen, a manager for employer, testified for employer. Claimant and Claimant's wife also testified. Following the hearing, the appeals tribunal made the following findings of fact:

The claimant worked for the employer installing automotive windshields until

1. We note that neither Respondent filed a brief in this matter.

discharged on December 10, 2008. The claimant was discharged because he did not follow proper and known procedure in preparing a pinch weld to receive a new windshield.

There was rust in the pinch weld and proper procedure required that the rust be properly removed if necessary and that, whenever present, primed before a bonding agent is applied. The claimant was aware of this procedure. The claimant's conduct resulted in wind noise to the customer's vehicle and the employer having to redo the work.

The appeals tribunal then stated the following conclusions of law:

The claimant was discharged on December 10, 2008. The claimant's conduct in not properly preparing the rusted pinch weld reflects a substantial disregard for the employer's interest and of reasonable and known standards of behavior which the employer had a right to expect of him. The claimant's discharge on December 10, 2008, was for misconduct connected with his work.

Finally, the appeals tribunal modified the deputy's determination and decided, "[t]he claimant is disqualified for waiting week credit and benefits until the claimant has earned wages for insured work equal to six times the claimant's weekly benefit amount after December 10, 2008."

Claimant filed an application for review by the Labor and Industrial Relations Commission. The Commission affirmed and adopted the appeals tribunal's decision. Commissioner John Hickey dissented from the decision. Claimant appeals the decision of the Commission.

## Standard of Review

The standard for our review of decisions by the Commission in unemployment cases is set forth in Article 5, Section 18 of the Missouri Constitution and Section 288.210, RSMo.[2] Pursuant to the statutory standard in Section 288.210:

... The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

■ "In reviewing the Commission's decision, this Court is not bound by the Commission's conclusions of law or its application of the law to the facts." *Difatta–Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 595 (Mo.banc 2008).

## Discussion

■ Claimant does not allege the commission's findings of fact are not supported by competent and substantial evidence, nor does he allege fraud. "Absent indications of fraud, the factual findings of the Commission are conclusive so long as they are supported by competent and substantial evidence." *Freeman v. Gary Glass & Mirror, L.L.C.*, 276 S.W.3d 388, 391 (Mo.App.2009); § 288.210. "In determining whether competent and substantial evidence was presented, we examine the

**2.** Unless otherwise indicated, statutory cites are to RSMo 2008.

evidence in the record as a whole." *Freeman v. Gary Glass, supra.* We conclude, after examining the whole record, the commission's findings of fact are supported by competent and substantial evidence and were not procured by fraud. Therefore, we conclusively accept the findings of fact made by the Commission.

 The sole question now before this court is whether the Commission's legal determination that Claimant was discharged for misconduct is sufficiently supported by the evidence in the record. As stated in *Freeman:*

> [T]his Court reviews questions of law *de novo. Dixon v. Div. of Employment Sec.,* 106 S.W.3d 536, 540 (Mo.App.2003). The issue of whether an employee's actions constitute misconduct related with work is a question of law, *Five Star Mfg., Inc. [v. Tanksley],* 168 S.W.3d [719] at 721 [ (Mo.App.2005) ], and "we are not bound by the Commission's conclusions of law or its application of the law to the facts." *Scrivener Oil Co., Inc. [v. Division of Emp. Sec.],* 184 S.W.3d [635] at 638 [ (Mo.App.2006) ].

276 S.W.3d at 391.

Section 288.050.2 disqualifies a claimant from receiving unemployment compensation benefits if the claimant was discharged for misconduct. § 288.050.2. "Misconduct," as defined by § 288.030.1(23), is:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

 The burden of proving Claimant was discharged for misconduct connected to work lies with the employer. *Freeman, supra.* In order to meet this burden, "the employer must show, by a preponderance of the evidence, that the claimant willfully violated the rules or standards of the employer or that the claimant knowingly acted against the employer's interest." *Id.* The court in *Frisella v. Deuster Elec., Inc.,* 269 S.W.3d 895 (Mo.App.2008), provided a good discussion of misconduct related to work. As stated by the court in *Frisella:*

> "Work related misconduct" must involve a willful violation of the rules or standards of the employer. *Murphy v. Aaron's Auto. Prods.,* 232 S.W.3d 616, 621 (Mo.App. S.D.2007); *Hoover v. Cmty. Blood Ctr.,* 153 S.W.3d 9, 13 (Mo. App. W.D.2005). Without evidence that a claimant "deliberately or purposefully erred, he cannot properly be found to have committed an act of misconduct." *Murphy,* 232 S.W.3d at 621.
>
> "It is essential to keep in mind that whether an employer has solid grounds to terminate an employee is not the same issue as whether the former employee qualifies for compensation." *Miller [v. Kansas City Station Corp.],* 996 S.W.2d [120] at 124 [ (Mo.App.W.D. 1999) ]. "There is a vast distinction between the violation of a rule of an employer that would justify the discharge of the employee and a violation of such rule that would warrant a determination of misconduct connected with the employee's employment so as to disqualify him or her for unemployment compensation benefits." *Hoover,* 153 S.W.3d at 13 (internal quotations omitted).
>
> While generally, an employee "may be terminated for poor judgment and irresponsible actions," "such actions are generally not a ground for denying compensation." *Miller,* 996 S.W.2d at 124.

"Poor workmanship, lack of judgment, or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct." *Murphy,* 232 S.W.3d at 621 (internal quotations omitted). In order to find "misconduct," proof that the claimant "willfully violated the rules or standards of employer" and that his "actions were not simply the result of poor workmanship, lack of judgment, or an inability to do the job" is required by a preponderance of the evidence. *Id.* 269 S.W.3d at 899. Furthermore, "[a]n isolated act of simple negligence is not, as a matter of law, misconduct connected with work." *Yellow Freight System v. Thomas,* 987 S.W.2d 1, 4 (Mo.App.1998).

■ Employer has never alleged, nor offered any evidence, that Claimant willfully, knowingly, deliberately, or purposefully "did not follow proper and known procedure in preparing a pinch weld to receive a new windshield." Without such evidence, Claimant cannot be found to have been discharged for misconduct connected with work. *Frisella,* 269 S.W.3d at 899–900; *Yellow Freight System,* 987 S.W.2d at 4. A thorough review of the entire record reveals employer has proven nothing more than possibly poor judgment, poor workmanship, or simple negligence by the Claimant. There is insufficient competent evidence in the record to support the Commission's legal conclusion that "claimant's discharge on December 10, 2008, was for misconduct connected with his work." The facts found by the Commission do not support its legal conclusions.

### Conclusion

Employer has failed to meet its burden of showing, and the Commission erred in finding, that Claimant was discharged for misconduct connected with his work. The decision of the Commission denying Claimant unemployment compensation benefits is reversed.

SCOTT, C.J., and RAHMEYER, J., concur.