**Noah COMEAUX, Appellant,**

v.

**CONVERGYS CUSTOMER MANAGEMENT GROUP, INC. and Division of Employment Security, Respondents.**

**No. ED 93900.**

Missouri Court of Appeals, Eastern District, Division One.

May 18, 2010.

John Ammann, St. Louis, MO, for appellant.

Convergys c/c UC Express, St. Louis, MO, pro se.

Bart Matanic, Jefferson City, MO, for respondents.

NANNETTE A. BAKER, Judge.

### Introduction

Noah Comeaux ("Employee") appeals from the Labor and Industrial Relations Commission's ("Commission") decision finding that he was disqualified for unemployment benefits. On appeal, Employee contends the Commission erred in finding that he was discharged for misconduct connected with his work. We reverse and remand.

### Factual and Procedural Background

On June 9, 2009, a deputy for the Division of Employment Security determined that Employee was disqualified from receiving unemployment benefits based on a finding that Employee was discharged on May 19, 2009 for misconduct connected with his work. Employee appealed the deputy's decision to the Division Appeals Tribunal. The Appeals Tribunal held a hearing on August 4, 2009 and heard the following evidence from Employee and his supervisor Columbus Smith.

Employee worked as a customer service representative for Convergys Customer Management Group. Inc. ("Employer"). He began working for Employer in November 2005. In early 2006, Employee began working on the Home Depot program where he made outbound calls to customers who had filled out a form indicating their interest in a particular service. This type of call is known as a "warm" call.

Smith testified that the disposition of the call would change immediately if the customer stated he or she was not interested. Smith stated, "If they say do not call back ... it gets dispositioned so we try and match the customer's desires."

Employer previously warned Employee about his performance on or about January 29, 2009, March 31, 2009, and April 23, 2009. On April 23, 2009, Employer placed Employee on an "action plan for quality" that involved improving the quality of the call by being friendlier to customers. Employee successfully completed the action plan on May 8, 2009.

On May 15, 2009, Employee made an outbound call, intending to speak with a woman regarding roofing. The woman's husband answered the phone. He stated that they were eating dinner, and asked why Employee was calling. When Employee answered, the man responded that they did not need roofing. At this point, a quality control representative overheard Employee's voice becoming tense and notified Smith to review the call.[1] Smith testified that Employee's voice was "curt and short" and "a little louder than normal speaking volume." In his notes from the call, Employee also referred to the man who answered the call as "Mr. Smarty Mouth."[2] Employer terminated Employee on May 19, 2009 for being rude toward a potential customer on an outbound call.

On appeal, the Appeals Tribunal affirmed the deputy's determination. Employee timely appealed to the Commission, and the Commission affirmed and adopted the determination of the Appeals Tribunal. The Commission found that Employer dis-

---

1. According to Smith's testimony, approximately ninety-eight percent of the calls are recorded.

2. This phrase is not in dispute. However, the findings of the Division of Employment Security Appeal's Tribunal states "Mr. Smarty Mouth"; while, Employer's "Counseling/Separation Record," states "Mr. Very Smart Mouth."

charged Employee because he was "rude towards a potential customer while making an out-bound sales call" and "was aware that he was required to treat all customers in a respectful manner." One commissioner filed a dissenting opinion, stating that Employee's conduct did not meet the definition of "misconduct" for the purposes of Missouri Employment Security Law. This appeal follows.

## Standard of Review

Article 5, Section 18 of the Missouri Constitution and Section 288.210 [3] set forth the standard for reviewing decisions of the Commission in unemployment compensation cases. On appeal, this court may:

modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Section 288.210

 Deference is given to the Commission's determinations as to the weight of the evidence and the credibility of the witnesses. *Freeman v. Gary Glass & Mirror L.L.C.*, 276 S.W.3d 388, 391 (Mo. App. S.D.2009). Absent fraud, the Commission's findings of facts are conclusive so long as they are supported by substantial and competent evidence. Section 288.210; *Frisella v. Deuster Elec., Inc.*, 269 S.W.3d 895, 898 (Mo.App. E.D.2008). To determine whether the facts are supported by substantial and competent evidence, we ex-

amine the record as a whole. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.*

 While deference is given to the Commission's findings of fact, this court reviews questions of law, including the application of law to the facts, *de novo. Freeman,* 276 S.W.3d at 391. Whether the Commission's findings support the conclusion that an employee's conduct meets the definition of "misconduct" is a question of law. *Frisella,* 269 S.W.3d at 898.

## Discussion

Employee presents one point on appeal claiming that the Commission erred in determining that Employee's discharge was due to misconduct connected with his work. Employee argues that his job performance falling below Employer's expectations alone does not constitute misconduct.

 Section 288.030.1(23) defines "misconduct" as:

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

A finding of misconduct requires that the employee willfully violated the rules and standards of the employer. *Wieland v. St.*

**3.** All further statutory references are to RSMo 2000, unless otherwise indicated.

*Anthony's Med. Ctr.*, 294 S.W.3d 77, 79 (Mo.App. E.D.2009). While poor judgment or irresponsible actions may justify an employee's discharge, "it does not necessarily provide a basis for disqualifying [an employee] from receiving unemployment benefits." *Scrivener Oil Co., Inc. v. Div. Employment Sec.*, 184 S.W.3d 635, 641 (Mo.App. S.D.2006); *see also Frisella*, 269 S.W.3d at 899. There is a "vast distinction" between conduct that would justify an employer terminating an employee and conduct that is misconduct for the purposes of denying unemployment benefits. *Williams v. Enter. Rent–A–Car Shared Servs., LLC*, 297 S.W.3d 139, 144 (Mo.App. E.D.2009).

■ Generally, an employee bears the burden of proving eligibility for unemployment compensation benefits. *Frisella*, 269 S.W.3d at 899. However, when an employer claims an employee was discharged for misconduct, the burden shifts to the employer to show that the misconduct was connected with the employee's work. *Id.* An employer must show by a preponderance of the evidence that the employee willfully or intentionally disregarded or violated the employer's rules. *Scrivener*, 184 S.W.3d at 641.

■ This court must determine whether, based on the evidence adduced, the Commission's legal finding that Employee's conduct constituted misconduct connected with his work was sufficiently supported by the evidence. We find the Commission's finding was not supported by the evidence.

In this case, Employer presented evidence that Employee's voice was "getting tense" with a customer and telling him not to be rude. Employer also presented evidence that Employee wrote "Mr. Smarty Mouth" in his call notes and Employee admitted writing this statement. As in *Hoover v. Community Blood Center*, while

Employee's actions could be viewed as inappropriate, Employer never shows that Employee's behavior was anything more than a lack of judgment. 153 S.W.3d 9 (Mo.App. W.D.2005). In *Hoover*, the employee, a donor care technician for a blood bank, received a warning after making several errors in reviewing donor history forms and failing to place unit number labels on donation bags resulting in the destruction of multiple collections of blood units. *Id.* at 10–11. The employee also made inappropriate comments to a donor. *Id.* at 11. The court found the employee's mistakes related to the collection of blood units constituted negligence and poor workmanship, but did not rise to the level of misconduct for the purposes of unemployment compensation law. *Id.* at 14. The court found that the employee's comments to the blood donor were intentional, insensitive and inappropriate, but did not find evidence of an improper motive for making the statements. *Id.* Similar to Hoover, in this case, Employee had been warned about his performance, and he also made an inappropriate comment about a customer. However, unlike in Hoover, Employee did not communicate the inappropriate comment to the customer.

In its brief, the Employer specifically argues, "It is *likely* that Employer's client reviews the logs of customers on behalf of the client. That means, that Employer's client *might* see such derogatory and inappropriate language that *could have* a negative impact on Employer. Employer *could lose* the client over such an occurrence." (emphasis added). Employer presented no evidence that Home Depot does in fact review the call logs nor does it establish how that written comment could have a negative impact on Employer.

Employer also argues that the May 15, 2009 phone call was willful because Employee worked for Employer for more than

three years without receiving any warnings and then received three warnings in four months. Employer cites to *Freeman v. Gary Glass & Mirror, L.L.C.* to support this proposition. 276 S.W.3d at 388. In *Freeman,* after three problem-free years with the employer, the employee intentionally turned away profitable business. 276 S.W.3d at 392. The employee testified he had no explanation for the change in his work habits and the court found that his misconduct was willful. *Id.* In this case, Smith testified that Employee worked for Employer for three years before receiving any warnings. However, Smith also testified that Home Depot had "really start[ed] to crack down" and require a more "user-friendly" atmosphere with customers. Unlike the employee in *Freeman,* Employee took steps to correct his behavior and successfully completed an action plan. Employer did not present competent and substantial evidence that Employee's behavior had changed.

Respondent cites three cases in support of its position that Employee's actions constituted misconduct but all are distinguishable from the facts in this case. In *Powell v. Division of Employment Security, Labor and Industrial Relations Commission of Missouri,* the employee was employed for three months but was often tardy, took extended lunch periods and left work early. 669 S.W.2d 47, 49 (Mo.App. W.D.1984). The employee's deficient job performance resulted in a monetary loss to the employer. *Id.* The court found that poor attitude alone cannot usually rise to the level of misconduct that disqualifies an employee from receiving benefits. *Id.* at 51. However, "poor attitude coupled with specific conduct adverse to an employer's interest or resulting in detriment to an employer can justify a finding of misconduct." *Id.* In this case, Employee used poor judgment when writing "Mr. Smarty Mouth" in his call notes, but Employer did not offer

any evidence to show how this would impact their business. Smith's testimony that Employee's voice was "curt and short" and only a "little louder" than normal speaking volume is not sufficient and competent evidence of conduct adverse to Employer's interest.

In *Dixon v. Stoam Industries, Inc.,* the employee refused to comply with a lawful and reasonable directive from his supervisor when employee's supervisor asked him to move to a different process and he refused. 216 S.W.3d 688, 694 (Mo.App. S.D.2007). Similarly, in *Freeman,* the employer presented testimony that the employee intentionally turned away profitable business from the employer and deliberately disobeyed his superior on more than one occasion. 276 S.W.3d at 392. The employee recommended the installation of shower doors after being specifically told not to; employee used two-inch screws on an installation when specifically told to use three-inch screws; and employee failed to double check measurements on a mirror after he had specifically been instructed to do so. *Id.* Here, Employer did not present evidence that Employee was intentionally rude to the customer or that he disobeyed his superior. Employer testified as to Employee's voice and his written statement but did not show that Employee intentionally disobeyed a directive of his superiors.

Employer must show by a preponderance of the evidence that Employee willfully violated Employer's rules. *Scrivener,* 184 S.W.3d at 641. Employer has not met that burden in this case. A thorough review of the whole record reveals nothing more than poor judgment and while Employee's behavior may have justified Employer's decision to terminate Employee's employment, we find that Employee's acts do not rise to the level of misconduct for

purposes of denying unemployment compensation benefits.

### Conclusion

The Commission's finding that Employee's actions amounted to misconduct which disqualified him from receiving unemployment benefits was not supported by competent and substantial evidence. Accordingly, we reverse and remand for the entry of an appropriate award.

KATHIANNE KNAUP CRANE, P.J., and CLIFFORD H. AHRENS, J., concur.