Kurt D. TENGE, Claimant/Appellant,

v.

**WASHINGTON GROUP INTERNATIONAL, INC., Employer,**

v.

**Division of Employment Security, Respondent/Respondent.**

**No. ED 94994.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 25, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 10, 2011.

James M. Martin, Martin, Malec & Leopold P.C., St. Louis, MO, for appellant.

Bart A. Matanic, Department of Labor and Industrial Relations—Division of Employment Security, Jefferson City, MO, for respondent, Division of Employment Security.

KATHIANNE KNAUP CRANE, Judge.

Claimant, Kurt D. Tenge, appeals from an order of the Labor and Industrial Relations Commission (the Commission) affirming the decision of the Appeals Tribunal of the Division of Employment Security (Appeals Tribunal) finding claimant disqualified from unemployment benefits. The Commission determined that claimant was terminated for misconduct connected with work within the meaning of section 288.050.2 RSMo (Cum.Supp.2006).[1] We reverse and remand.

Claimant was employed as a maintenance technician for Washington International Group, Inc. (employer), beginning on November 1, 1997.[2] Employer had written "Accident/Injury Reporting Procedures," which provided: "**All *injuries/illnesses* AND *property damage* *must be reported immediately*** to the supervisor and should receive medical attention as needed." The written policy in the record did not specify who was responsible for reporting injuries or what constituted an "injury." However, there was evidence that an injury was to be reported "by the employee that receives it, and/or the employee that is working with them." This requirement had been communicated to claimant by e-mail and at meetings. Ac-

---

1. All further statutory references will be to RSMo (Cum.Supp.2006), unless otherwise indicated.

2. He had previously worked an additional twenty years at the same site when it was owned by a different corporation.

cording to employer's witnesses, employer treated an electrical shock as an "injury."

Employer's witnesses also testified to employer's other policies. One policy was that employer required technicians to "de-energize," or "power-off," electrical equipment generating fifty or more volts of electricity before "working on" the equipment. There was also testimony that employer had a policy with respect to using personal protective equipment when working on energized electrical equipment.

Until March 2009, claimant had not received any safety or reporting policy violations. On March 12, 2009, claimant was working with a co-worker, Carmine Romano, when Mr. Romano said that he "banged" a finger. Claimant looked at the finger and did not see any signs of injury, and Mr. Romano declined to get medical attention, saying he was "fine." Claimant and Mr. Romano continued to work, and claimant did not report the incident. Claimant received a written warning for failing to immediately report his co-worker's injury, in violation of employer's injury reporting policy. Claimant subsequently signed the written warning form, which advised him as follows:

> Both parties involved did not follow site injury reporting procedures. The procedure is that all injuries, regardless of severity, are to be reported to your supervisor or other management team member immediately. The communication of this procedure has been provided to all employees on many occasions.

The warning then listed several annual meetings, trainings, and e-mails in which this policy had been communicated to employees. The warning also advised claimant that a future violation of the policy would result in his termination.

On October 21, 2009, claimant and Mr. Romano were installing conduit into an electrical panel for a control box. The panel was not de-energized. When Mr. Romano put a conduit nut on a piece of conduit that was on the panel, Mr. Romano said he "got shocked," referring to his hand. Claimant looked at Mr. Romano's hand, and it looked "fine" to claimant. They continued working. The following morning, Mr. Romano reported the injury to his supervisor. No medical treatment was provided to Mr. Romano.

Employer conducted a post-incident investigation, during which employer's safety specialist, Cody Patton, inspected the electrical panel and received statements from claimant and Mr. Romano about the incident. The investigation found that on the day of the incident, the electrical power to the panel where the conduit was being installed was not shut off; that claimant and Mr. Romano could have de-energized the panel by turning the disconnect switch to the "off" position; and that the failure to do so resulted in an injury to Mr. Romano. It further found that neither man was wearing personal protective equipment. The investigation concluded that failure to de-energize the equipment and to wear personal protective equipment violated employer's safety policies, and that the failure to immediately report Mr. Romano's injury until the next morning constituted a violation of employer's injury reporting policy.

On October 30, 2009, claimant was discharged for failing to follow safety practices and procedures for work done on electrical equipment and for failing to follow employer's injury reporting policy and procedure. Claimant's explanation to employer was that his actions were a "mistake." After he was discharged, claimant filed a claim for unemployment benefits, and employer filed a letter of protest. The Division of Employment Security issued a deputy's determination that disqualified claimant from receiving benefits because claimant was discharged for misconduct

connected with work. Claimant appealed the deputy's determination to the Appeals Tribunal.

The Appeals Tribunal conducted a telephone hearing on February 18 and March 23, 2010. At the hearing, claimant testified on his own behalf. Dawn Gephardt, employer's human resource manager, and Mr. Patton, employer's safety specialist, testified on behalf of employer. Employer also placed the written "Accident/Injury Reporting Procedures" into the record.

At the hearing, claimant admitted that he had not de-energized the panel and that he had not been wearing protective equipment. Claimant explained the incident as follows:

And I was putting a panel—installing this panel that I designed, and I was mounting it, and I was putting a piece of conduit and there was no—there was actually no electrical work that was being done yet, just a piece of conduit. And—and I had Carmine just put a conduit nut on a piece of conduit, that was on this panel, and, like I say, all of a sudden he said—said—he—he—he said he got shocked. I don't know. I didn't see it. I—and the more I think about it, he could have had static electricity because there's pla—there's big plastic pipes in there, and he could have rubbed against that or he could have hit something sharp, but I don't know what he did. But after it happened, you know, I said—said, are you all right? I looked at his hand. I didn't, you know, I don't know what—what—I didn't see it happen. I don't know what was going—so—so as far as, you know, and I—I don't know what—what his problem was, but just so I—

Claimant repeated that he had not de-energized the panel because he was "just putting a piece of conduit into the control panel."

Claimant also explained why he had thought there was no injury:

I didn't—like I say, and I don't know if Car—Carmine actually got shocked or if it was the static electricity from—[interruption omitted]—rubbing against the plastic pipe, or if he just hit something sharp—[interruption omitted]—but there was no injury.

He testified that he had looked at Mr. Romano's hand, and there was nothing unusual about his hand to suggest an injury.

Claimant testified that they had not been wearing protective gear because "we weren't really doing electrical work. We were just mounting a box next to a panel, and that's—that's all that was happened." Claimant was then asked if he was aware that he was supposed to be wearing protective gloves and a face mask when he was working on "that type of a unit." Claimant answered: "We're—we're right on the edge of that, like I told you. We're mounting a panel, next to it. We weren't getting—once, when we were gonna get ready to start running the wires and stuff, then we were gonna do it."

After the hearing, the Appeals Tribunal affirmed the deputy's determination and concluded that claimant was discharged for misconduct connected with work because he "knowingly violated reasonable employer safety rules and policies." Claimant filed an application for review with the Commission, which unanimously affirmed and adopted the decision of the Appeals Tribunal. Claimant appeals from the Commission's decision.

Claimant raises two points on appeal. Claimant's first point, which challenges the finding that he was discharged for misconduct connected with his work, is dispositive.

When we review a Commission order, "[t]he findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." Section 288.210 RSMo (2000); *see Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003). We may modify, reverse, remand for rehearing, or set aside a decision of the Commission only on the following grounds and no other: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the making of the award. Section 288.210 RSMo (2000).

Although we defer to the Commission on issues of fact when the findings are supported by competent and substantial evidence, we review questions of law *de novo. Frisella v. Deuster Elec., Inc.,* 269 S.W.3d 895, 898 (Mo.App.2008). Whether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law. *Id.*

■ The Commission determined that claimant was discharged for misconduct connected with his work because claimant "knowingly violated reasonable employer safety rules and policies." Section 288.050.2 provides:

> If a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits....

"Misconduct" is defined by section 288.030.1(23) as:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.[3]

We have explained:

> "The statutory term 'misconduct' should not be so literally construed as to effect a forfeiture of benefits by an employee except in clear instances; rather, the term should be construed in a manner least favorable to working a forfeiture so as to minimize the penal character of the provision by excluding cases not clearly intended to be within the exception."

*Continental Research v. Labor & Indus. Rel.,* 708 S.W.2d 749, 750 (Mo.App.1986) (quoting 76 Am.Jur.2d *Unemployment Compensation* § 52 (1975)).

■ Generally, an employee bears the burden of proving eligibility for unemployment compensation benefits. *Frisella,* 269 S.W.3d at 899. However, when an employer claims an employee was discharged for misconduct, the burden shifts to the employer to prove by a preponderance of the evidence that the employee willfully violated the employer's rules or standards. *Id.*

■ A violation of a reasonable work rule can constitute misconduct. *McClel-*

---

**3.** This definition was added to the statute in 2006. It codifies the definition of misconduct set out in 76 Am.Jur.2d *Unemployment Compensation* § 52 (1975), that Missouri courts had previously used. *See, e.g., McClelland v.*

*Hogan Personnel, LLC,* 116 S.W.3d 660, 664 (Mo.App.2003); *Pemiscot Hosp. v. Missouri Labor & Ind.,* 897 S.W.2d 222, 225 (Mo.App. 1995); *Continental Research v. Labor & Indus. Rel.,* 708 S.W.2d 749, 750 (Mo.App.1986).

*land v. Hogan Personnel, LLC,* 116 S.W.3d 660, 665 (Mo.App.2003). However, a violation of a work rule is not dispositive proof of misconduct connected with work. *Id.* " 'Instead, a reasonable work rule serves as a relevant factor in determining if the behavior at issue is in fact misconduct and if such misconduct is connected with work.' " *Id.* (quoting *Baldor Elec. Co. v. Reasoner,* 66 S.W.3d 130, 134 (Mo. App.2001)). "Determining whether an employee's conduct constitutes 'misconduct connected with his work' is a 'troublesome question,' and 'there is more to the issue than a simple or deliberate violation of an employer's rule of conduct.' " *McClelland,* 116 S.W.3d at 665 (quoting *Pemiscot Hosp. v. Missouri Labor & Ind.,* 897 S.W.2d 222, 226 (Mo.App.1995)). "Poor workmanship, lack of judgment, or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct." *McClelland,* 116 S.W.3d at 665.

■■ "The initial requirement is that the employee in some way *willfully* violate the rules and standards of the employer." *Wieland v. St. Anthony's Medical Center,* 294 S.W.3d 77, 79 (Mo.App.2009). To willfully disregard employer's interests, a claimant must be aware of the requirement and knowingly or consciously violate it. *McClelland,* 116 S.W.3d at 666. "There is a vast distinction between the violation of an employer's work rule, which would justify the discharge of the employee, and a willful, wanton, or deliberate violation of such rule, which would warrant a determination of misconduct and disqualify the claimant for unemployment-compensation benefits." *Wieland,* 294 S.W.3d at 79; *McClelland,* 116 S.W.3d at 665. Without evidence that an employee deliberately or purposefully violated a workplace rule, the employee cannot properly be found to have committed an act of misconduct. *Frisella,* 269 S.W.3d at 899.

Employer relies on cases in which the violation of a work rule or policy constituted willful misconduct. All are distinguishable. In *Finner v. Americold Logistics, LLC,* 298 S.W.3d 580, 584 (Mo.App.2009), the employee admitted that he deliberately violated the employer's written safety rule. In *Koret of California, Inc. v. Zimmerman,* 941 S.W.2d 886, 888 (Mo.App.1997), the employee's failure to follow certain accounting policies was willful because she admitted she knew the policies and her explanation that she could not follow them due to the "press of business" was refuted by the evidence. Likewise, in *Hurlbut v. Labor & Indus. Rel. Com'n,* 761 S.W.2d 282, 285 (Mo.App.1988), the employee's failure to follow the employer's accounting procedures was willful because the employee was aware both of the procedures and of their purpose, and the evidence showed that she chose not to follow or enforce them. In *Dixon v. Stoam Industries, Inc.,* 216 S.W.3d 688, 694 (Mo.App. 2007), willfulness was shown by an employee's refusal to follow a direct order of a supervisor. Similarly, in *Freeman v. Gary Glass & Mirror, L.L.C.,* 276 S.W.3d 388, 392 (Mo.App.2009), willfulness was demonstrated when an employee disobeyed his superior on three occasions by taking actions after his superior specifically told him not to. The evidence in this case does not rise to the level of the evidence of willfulness in the above cases.

■ The facts that the reporting policy was in writing and claimant had received a prior written warning for violating it are not, without more, determinative of willfulness. The employer must establish that the violation of the work rule was deliberate and knowing even when the work rule is a safety rule contained in a written manual provided to the employee, *McClelland,* 116 S.W.3d at 665–66; *Pemiscot,* 897 S.W.2d at 226–29, and even if a prior viola-

tion of an employer's policy resulted in a written warning. *Duncan v. Accent Marketing, LLC*, 328 S.W.3d 488 (Mo.App. E.D.2010).

Claimant argues that he did not intentionally violate the safety and reporting policies because he did not believe there was an injury, his failure to report a non-injury was merely a lack of judgment, and he honestly believed he was following the other safety rules about powering-off electrical equipment and wearing safety equipment. Claimant's arguments are supported by the record.

Claimant testified that he failed to report the electrical shock because, based on his own observations and the co-worker's statement, he had not believed the co-worker had been injured, and in fact, the co-worker had not experienced an injury requiring medical treatment. While Mr. Patton testified that employer treated electrical shocks as injuries required to be reported, there was no evidence that this interpretation had been specifically communicated to claimant. At most, the evidence shows a mere lack of judgment in determining whether the incident required a report.

Claimant admitted that he knew he was required to wear protective gear and to power-off electrical equipment generating fifty or more volts of electricity when he was working on it, but he testified that the work they were doing was "next to the panel," that the work at that point was not electrical in nature, and that they were going to follow the safety procedures when they started running the conduit. At the hearing, employer did not adduce testimony or other evidence explaining what its policy meant with respect to "working on" energized equipment. At most, the evidence shows that claimant misjudged whether he was "working on" an energized panel and also misjudged at what point his duty under the policy to de-energize the

panel and put on safety equipment was triggered.

Claimant used poor judgment in failing to report the electrical shock of his co-worker and in failing to de-energize the electrical panel and to wear protective gear at the stage of work in which he was engaged. This conduct may have been sufficient to discharge him from employment, but it does not rise to the level of willful or deliberate conduct sufficient to deny him unemployment compensation. Point one is granted.

*Conclusion*

The order of the Commission is reversed and the case is remanded.

GLENN A. NORTON, P.J. and GEORGE W. DRAPER III, J., concur.