Tara MOONEYHAM, Appellant,

v.

BARNZ B, INC., and Missouri Division
of Employment Security,
Respondents.

No. SD 30903.

Missouri Court of Appeals,
Southern District,
Division Two.

July 12, 2011.

Tara Mooneyham, Pro se appellant.

Paula S. Green, for Respondent.

DANIEL E. SCOTT, Chief Judge.

Tara Mooneyham ("claimant") was denied unemployment benefits because she was found to have been discharged for misconduct connected with work. *See* §§ 288.030.1(23) & 288.050.2.[1] We reverse

___

1. Statutory citations are to the Missouri Em-    ployment Security Law, RSMo chapter 288,

because the competent, substantial evidence of record does not support the misconduct finding.[2]

## Factual and Procedural Background

Claimant worked for Barnz B, Inc. ("employer") for almost four years. She was told at a March 2010 performance review that her job duties would change and her pay would be reduced to $10 per hour. Sent home early to consider her job situation, Claimant was to meet again with management the next day. We quote verbatim the appeals tribunal's remaining fact findings:

> After the claimant left the meeting, she called the president about 6:00 p.m. and told her she wanted a job description. The president told her they would discuss it the following day. The claimant responded she did not know if she would be in for a job that paid $10.00 an hour. The president told the claimant she would be doing the same work as the other employees in manufacturing. The claimant again asked for a job description. The president told the claimant she would have it for her in the morning. The claimant wanted the president to send her a job description that evening, but the president refused. Finally, the president told the claimant not to push this or she would fire her if she had to. The claimant said "God bless you, and sweet dreams" and hung up.
>
> The president decided the claimant was too hostile to her and she was concerned about the claimant's continuing to work for the company. She called the claimant back about 30 minutes later

and reached the claimant's voice mail. She left a message that the claimant's employment had been terminated.

Claimant sought unemployment benefits. Employer protested. The appeals tribunal ruled, after a hearing, that claimant was disqualified from benefits due to her misconduct connected with work:

> The claimant's confrontational behavior indicates a disregard of the standards of behavior the employer had a right to expect of the claimant and, thus, constitutes misconduct connected with work. The claimant could have waited until the following day to discuss the situation with the president and, thereby, possibly saved her job.

The Labor and Industrial Relations Commission, by a 2–1 vote, affirmed and adopted the appeals tribunal's decision. Thus, we treat the latter as the Commission's award. *See Scrivener Oil Co. v. Div. of Employment Sec.*, 184 S.W.3d 635, 638 (Mo.App.2006).

## Legal Principles and Analysis

■ On appeal, the Commission's decision may be reversed or set aside when, among other reasons, it is not supported by sufficient, competent evidence of record. § 288.210. We review the record as a whole and defer to the Commission's fact findings, but not its legal conclusions or application of the law to the facts. *Comeaux v. Convergys Customer Management Group, Inc.*, 310 S.W.3d 759, 762 (Mo.App.2010).

■ Of special import here, whether "the Commission's findings support the conclusion that an employee's conduct meets the definition of 'misconduct' is a

---

as amended through 2006.

**2.** Despite various deficiencies in claimant's brief, "when possible appellate courts prefer to address the merits of an appeal." *Bressler*

*v. The Wooten Co.*, 213 S.W.3d 240, 242 (Mo. App.2007). The court is able to do so in this case. Thus, we decline respondent's invitation to dismiss the appeal.

question of law," which this court determines *de novo.* *Id.* It was employer's burden to prove such misconduct (*Id.* at 763), which § 288.030.1(23) defines as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

For these purposes, "disregard of standards of behavior" means an intentional slight. *Sakaguchi v. Missouri Dept. of Corrections,* 326 S.W.3d 890, 895 (Mo.App. 2010). An employee's poor judgment may justify job termination, but there is a "vast distinction" between that and misconduct which precludes unemployment benefits. *Comeaux,* 310 S.W.3d at 763. Misconduct, in this context, is to be construed least favorably to a forfeiture of benefits. *Nevettie v. Wal–Mart Associates, Inc.,* 331 S.W.3d 723, 727 (Mo.App.2011).

The record shows that claimant's discharge was based solely on her conduct during the phone call with employer's president. To its credit, employer candidly admitted at oral argument that it could not find a reported case upholding a misconduct finding on similar facts.[3] By contrast, the analyses and holdings in *Sakaguchi, Nevettie, Comeaux,* and other recent cases indicate that claimant's single incident did not rise to the level of disqualifying misconduct under § 288.030.1(23). *See, e.g., TAMKO Building Products, Inc. v. Frankoski,* 258 S.W.3d 575, 578–79 (Mo.App.2008)(heated words to direct supervisor, although poor judgment, was not the type of willful misconduct that disqualified claimant from unemployment benefits).

The Commission found that employer's president told claimant "not to push this or she would fire her." The record shows that claimant did as directed. It may have been poor judgment for claimant to end the call as she did, and no one questions employer's authority to fire her. Employer's burden, however, was to show how this rose to the level of misconduct which would bar claimant from drawing unemployment. Employer did not make this showing.[4]

**3.** Court: How in the world is this misconduct?
Attorney: Well, judge, in this case, um—
Court: Tell me your best case . . . that is most similar to this situation where a finding of misconduct was upheld.
Attorney: There—I could not find a Missouri case where a finding—or where there were facts like this that were—a finding of misconduct was upheld. I have not found one.
Court: Does that not trouble you? I mean, that troubles us.
Attorney: It does not, judge. . . .
Court: I mean, I asked you already once. What is your best case, most similar to these facts, where one incident of hostile language . . . was deemed misconduct by the Commission and that was upheld on appeal?
Attorney: Judge—
Court: I am struggling with this.
Attorney: I simply—I can't cite the court to one.
Court: Again, that's troubling to us.

**4.** We would be remiss if we failed to note the recent frequency of Commission error in finding benefit-disqualifying misconduct. In the past six months, *see Kleimann v. St. Louis County Cab Co.,* 342 S.W.3d 415 (Mo.App. 2011); *Tolliver v. Friend Tire Co.,* 342 S.W.3d 428 (Mo.App.2011); *Meyer v. City of St. Peters,* 341 S.W.3d 132 (Mo.App.2011); *Rush v. Kimco Corp.,* 338 S.W.3d 407 (Mo.App.2011); *Schilb v. Duke Mfg. Co.,* 338 S.W.3d 392 (Mo.App.2011); *Gaddy v. AmeriGas Propane, Inc.,* 334 S.W.3d 907 (Mo.App.2011); *Walker v. Div. of Employment Sec.,* 333 S.W.3d 517

**Conclusion**

No competent and substantial evidence supports the misconduct finding. We reverse and remand for the entry of an appropriate award.

BATES and FRANCIS, JJ., concur.

(Mo.App.2011); *Nevettie, supra*; *Tenge v. Washington Group Int'l, Inc.*, 333 S.W.3d 492 (Mo.App.2011); and this case. *See also Wooden v. Div. of Employment Sec.*, 341 S.W.3d 770 (Mo.App.2011)(remanding for further findings as to whether claimant acted with requisite culpability or willful intent to establish misconduct).

We will not cite the many cases so holding, but the law is consistent, long-standing, and very clear—there is a "vast distinction" between a reason to fire and misconduct which further warrants a forfeiture of unemployment benefits. In dictionary terms, a vast distinction is one that is "very great."