Richard SCOTT, Appellant,

v.

DIVISION OF EMPLOYMENT
SECURITY, Respondent.

No. WD 74587.

Missouri Court of Appeals,
Western District.

Sept. 4, 2012.

As Modified Oct. 2, 2012.

Jeannie D. Mitchell, Jefferson City, MO, for appellant.

Carla G. Holste, Jefferson City, MO, for respondent.

Before Division One: JAMES M. SMART, Presiding Judge, LISA WHITE HARDWICK and GARY D. WITT, Judges.

LISA WHITE HARDWICK, Judge.

Richard Scott appeals the Labor and Industrial Relations Commission's decision that he is disqualified from receiving unemployment benefits. He claims the Commission's conclusion that his employer, CEMO Lanes, LLC, discharged him for misconduct is not supported by the evidence. Because the evidence shows that Scott's statements leading to his discharge were the result of poor judgment and not misconduct, we reverse the Commission's decision and remand the case for the entry of an appropriate award.

### FACTUAL AND PROCEDURAL HISTORY

Scott began working for CEMO Lanes, a bowling alley, as head mechanic in October 2010. Toward the end of his work day on August 24, 2011, Scott and two of CEMO Lanes's owners, Lonnie Wilson and Perry Walker, had a discussion about issues under Scott's authority. During this discussion, Scott told Wilson and Walker that he believed he had been "lied to since the beginning" about his job and his authority. Walker bristled at the statement and told Scott, "You're not going to call me a liar." Scott attempted to resume the business discussion by telling Wilson and Walker about the issues he was having with the bowling alley.

When their discussion continued, Wilson's wife, who is not an owner, interrupted the conversation on unrelated topics. Scott told her to be quiet because it was "none of her business." Scott, Wilson, and Walker resumed their discussion, but Wilson's wife interrupted a second time. Scott repeated his demand for her to leave the conversation and told her again that it was "none of her business." At this point, Wilson told Scott, "[Y]ou're fired[,] get your stuff. You're not going to talk to my wife that way."

Scott subsequently filed a claim for unemployment benefits with the Division of Employment Security. CEMO Lanes did not protest the claim. The deputy denied Scott's claim on the basis that CEMO Lanes had discharged him for misconduct

in that he was "verbally abusive to the owner's wife." Scott appealed to the Division's Appeals Tribunal.

The Appeals Tribunal held a telephone hearing, during which Scott and his wife were the only two witnesses. No one from CEMO Lanes participated in the hearing. Following the hearing, the Appeals Tribunal affirmed the deputy's determination that CEMO Lanes discharged Scott for misconduct. In its order, the Appeals Tribunal concluded that it was "impolitic" for Scott to call his employer a liar, which is the sentiment the Appeals Tribunal believed Scott intended to convey with his "blunt" language. The Appeals Tribunal further concluded that it was "rude and unwise" for Scott to "brusquely" tell the wife of his employer to stop talking and leave a conversation. The Appeals Tribunal found Scott intentionally made these statements and chose his words "poorly." The Appeals Tribunal characterized Scott's statements as "hostile, injurious, insulting and destructive" and concluded his behavior and speech signaled a "heightened disregard of standards of behavior which the employer has a right to expect of its employee."

Scott appealed to the Commission. The Commission affirmed the Appeals Tribunal's decision and adopted the decision as its own. Scott appeals.

### STANDARD OF REVIEW

Our review of the Commission's decision to deny unemployment benefits is governed by Section 288.210, RSMo 2000. We may modify, reverse, remand for rehearing, or set aside the Commission's decision on only these grounds: "(1) the Commission acted without or in excess of its power; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient, competent evidence in the record to warrant the making of the award." *Lewis v. Fort Zumwalt Sch. Dist.*, 260 S.W.3d 888, 889–90 (Mo.App. 2008) (citing § 288.210).

To determine whether there is sufficient competent and substantial evidence to support the Commission's decision, we examine the evidence in the context of the entire record. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). We defer to the Commission on determinations regarding the weight of the evidence and the witnesses' credibility. *Scrivener Oil Co. v. Crider*, 304 S.W.3d 261, 266 (Mo.App.2010). We give no deference to the Commission's determinations regarding issues of law. *Id.*

### ANALYSIS

The Commission determined that Scott is disqualified from receiving unemployment benefits because CEMO Lanes discharged him for misconduct. Whether an employee's actions constituted misconduct is a question of law that we review *de novo*. *Finner v. Americold Logistics, LLC*, 298 S.W.3d 580, 584 (Mo.App.2009). Section 288.030.1(23), RSMo Cum.Supp. 2011, defines misconduct as:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Each of these categories of misconduct requires a culpable intent on the part of the employee. *Wooden v. Div. of Emp't Sec.*, 364 S.W.3d 750, 753 (Mo.App.

2012). "Willful misconduct is established when action or inaction by the claimant amounts to conscious disregard of the interests of the employer or constitutes behavior contrary to that which an employer has a right to expect from an employee." *Dixon v. Stoam Indus., Inc.*, 216 S.W.3d 688, 693 (Mo.App.2007) (internal quotation marks and citations omitted). Negligence can be a basis for finding misconduct, but only when the negligence is "in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." § 288.030.1(23); *Wright v. Casey's Mktg. Co.*, 326 S.W.3d 884, 887 (Mo.App. 2010). " 'Poor workmanship, lack of judgment, or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct.' " *Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13 (Mo. App.2005) (citation omitted).

■ Thus, while an employee's lack of judgment may justify his termination, it does not disqualify him from receiving benefits due to misconduct. *Id.* Indeed, there is a "vast distinction" between conduct justifying an employee's termination and misconduct precluding unemployment benefits. *Comeaux v. Convergys Customer Mgmt. Grp., Inc.*, 310 S.W.3d 759, 763 (Mo.App.2010). "Misconduct, in this context, is to be construed least favorably to a forfeiture of benefits." *Mooneyham v. Barnz B, Inc.*, — S.W.3d —, —, 2011 WL 2713555 (Mo.App.2011).

■ The employer bears the burden of proving that the employee was discharged for misconduct. *Hoover*, 153 S.W.3d at 13. In this case, the employer, CEMO Lanes, did not participate in the hearing or otherwise dispute the unemployment claim. Nevertheless, " 'in all cases where the burden of proof is on one party[,] the evidence produced by the other party may lift or lighten the load.' " *White v. St. Louis Teachers Union*, 217 S.W.3d 382, 389 (Mo.App.2007) (citation omitted). "There is no requirement that the evidence presented and considered by the decision-maker must have been offered by the party bearing the burden of proof." *Id.* Because CEMO Lanes did not participate in the hearing, the only testimony about the discussion that led to Scott's discharge was his uncontroverted testimony, which the Commission found "painted a reasonable picture of how that discussion went."

■ Based upon Scott's testimony, the Commission concluded that he was discharged for misconduct because of his statement to Wilson and Walker that he had been "lied to since the beginning" and because he twice told Wilson's wife to stop talking and leave the discussion, as it was "none of her business." Scott clearly intended to make those statements, and they could be viewed as the Commission viewed them, which is "impolitic," "blunt," "rude," and "unwise." The issue, however, is whether, in making those statements, Scott deliberately disregarded the standard of behavior his employer had the right to expect from him or was culpably negligent. *See Wooden*, 364 S.W.3d at 754.

Scott testified at the hearing that he made the statement about having been "lied to since the beginning" because when he took the job with CEMO Lanes, he thought he would "have some input into how the place was being run in order to make it have a turn around." There is no evidence to suggest that he had any improper motive for making the statement. Indeed, the Commission found that Scott's statement that he had been "lied to since the beginning" was in reference to his job and his authority. This finding indicates

that the Commission believed Scott's testimony that he made the statement in an attempt to clarify the extent of his authority with the owners. He simply chose his words "poorly," as the Commission found. Although Scott phrased his desire to clarify the extent of his job and his authority in a blunt and impolitic manner, there is no evidence that this statement was the result of anything more than poor judgment.

Likewise, there is no evidence that Scott's twice telling Wilson's wife to stop talking and leave the discussion because it was "none of her business" was the result of anything more than poor judgment. Scott testified that, when Wilson's wife interrupted the discussion, he told her it was "none of her business" because she was not an owner and he wanted to discuss business issues with the owners. The Commission specifically found that Wilson's wife had interrupted the business discussion "on unrelated topics." There is no evidence that, under such circumstances, Scott had an improper motive for telling her to leave the discussion because it was "none of her business." Again, we note that the Commission expressly found that Scott chose his words "poorly." Instead of showing misconduct, the evidence indicates only that Scott's statements to Wilson's wife, while blunt and rude, were the product of poor judgment.

The Division cites *Acord v. Labor & Indus. Relations Comm'n*, 607 S.W.2d 174 (Mo.App.1980), to support the Commission's finding of misconduct. However, in *Acord*, the court held that an employee's calling her supervisor a "motherfucker" constituted disqualifying misconduct, as the employee could have anticipated being fired for using such an "offensive and vulgar" word. *Id.* at 175–76. Scott's statements were neither vulgar nor profane,

and they were nowhere near that level of offensiveness.

Rather, Scott's statements were part of a heated discussion between an employee and employer.[1] In *TAMKO Bldg. Prods., Inc. v. Frankoski*, 258 S.W.3d 575, 578–79 (Mo.App.2008), the court held that "heated words" exchanged between an employee and his supervisor, who did not testify that he felt threatened during the conversation, showed only poor judgment on the employee's part and did not constitute disqualifying misconduct. Similarly, in *Mooneyham*, the court held that an employee's confronting the president of the company on the phone and making comments that the president interpreted as hostile constituted poor judgment and did not rise to the level of disqualifying misconduct. *Mooneyham*, —— S.W.3d at ——. In this case, although the Commission characterized Scott's statements as "hostile" and "injurious," there is no evidence that Wilson, Walker, or Wilson's wife felt threatened by Scott's statements during the business discussion.

Scott's statements were blunt and rude. While the statements were sufficient to discharge him from his employment with CEMO Lanes, the evidence does not support a finding that the statements were the result of anything more than a simple lack of judgment. Without evidence that a claimant deliberately erred or was culpably negligent, he cannot be found to have committed misconduct. *Wooden*, 364 S.W.3d at 754. CEMO Lanes failed to meet its burden of proving that Scott deliberately disregarded the standards expected of its employees or was negligent in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or an intentional and substantial disregard

---

1. The record does not indicate that the discussion between Scott and the owners happened in front of any customers, and the Commission made no finding that it did.

of *CEMO* Lanes's interest or his obligations. Accordingly, the Commission erred in finding that Scott's statements constituted disqualifying misconduct.

### CONCLUSION

The Commission's decision is reversed, and the case is remanded for the entry of an appropriate award.

Judges WITT concurs in Judge HARDWICK'S majority opinion.

Judge SMART concurs in separate concurring opinion.

JAMES M. SMART, JR., Judge, concurring.

Employers are entitled to be treated with respect by their employees in the workplace. An employee's harsh accusations and emotional displays of resentment have the potential to "back an employer into a corner" and invite a discharge.

Depending on the actual context, remarks such as those in this case could easily constitute disqualifying misconduct. This case arises in a context in which the employer chose not to justify the discharge, thereby allowing an inference that, despite the facial impact of the words, the employer lacked adequate justification for the discharge of claimant. I agree that claimant, who alleged the remarks were not unjust or intemperate under the particular circumstances, should not be saddled with an *ipso facto* declaration of misconduct. I concur with the notion that the Commission erred only because of the fact that this case is not normative and will provide no precedential support for the claimants who unfortunately invite their own discharge by disrespectful misconduct.