

# In the
# Missouri Court of Appeals
## Western District

**SUSAN MILLER,**
          **Appellant,**

                              **WD85582**
                              **OPINION FILED:**
                              **May 30, 2023**

**v.**

**DIVISION OF EMPLOYMENT SECURITY,**
          **Respondent.**

### Appeal from The Labor and Industrial Relations Commission

Before Division Three:  Janet Sutton, Presiding Judge, Cynthia L. Martin, Judge, and
Edward R. Ardini Jr., Judge


Susan Miller ("Miller") appeals from a decision by the Labor and Industrial

Relations Commission ("Commission") that concluded Miller was disqualified from

receiving unemployment benefits because she was discharged from her employer for

misconduct connected with work.  Miller argues on appeal that proper procedures were

not followed in the review of her claim for unemployment benefits and that the

Commission's findings of fact were not supported by the evidence.  Finding no error, we

affirm the Commission's decision.

## Factual and Procedural Background[1]

Miller began working as an interior design sales associate for Nell Hills, a furniture and home goods retailer, on June 9, 2020. During her employment with Nell Hills, Miller was compensated on a commission basis. Miller's final day of work at Nell Hills was September 10, 2020, when she was discharged from her employment by Carlie Goss ("Goss"), the design manager of Nell Hills.

Three days later, on September 13, 2020, Miller filed a claim for unemployment benefits with the Division of Employment Security ("Division"). On September 22, 2020, the Division mailed Nell Hills a notice of Miller's claim for unemployment benefits indicating that, if Nell Hills wished to file a protest, it should do so no later than October 2, 2020. Nell Hills filed a protest, but the record is not clear as to when the protest was filed with the Division. At some point that is not made clear in the record, Nell Hills provided the Division with an email from Goss to Deborah Glaus ("Glaus"), the human resources manager for Nell Hills, that was dated October 16, 2020. Goss's email indicated that, of the forty-six calendar days that Miller worked, she was late to work twenty-four of those days, despite being verbally warned on multiple occasions, and that Miller stayed after hours in the store without authorization to do so. Goss's email further asserted that Miller failed to attend four mandatory meetings and confronted two fellow interior design sales associates on the sales floor while customers were present. A

---

[1]When reviewing the Commission's decision, we view the evidence objectively and not in the light most favorable to the Commission's decision. *Sanders v. Div. of Emp. Sec.*, 660 S.W.3d 35, 41 (Mo. App. W.D. 2023).

Division deputy determined on November 23, 2023, that Miller was disqualified from receiving unemployment benefits because she was discharged by Nell Hills for misconduct connected with work, particularly absenteeism ("deputy's determination").

Miller appealed the deputy's determination to the Appeals Tribunal. An appeals referee held a telephone hearing on March 24, 2021, at which Miller participated but Nell Hills did not. The Appeals Tribunal did not issue its determination after this telephone hearing. Instead, a different appeals referee held a second telephone hearing on December 23, 2021, at which both Miller and Nell Hills participated.[2] The Appeals Tribunal received documents from the Division regarding Miller's claim for unemployment benefits, and heard testimony from Glaus and Miller. Glaus testified on behalf of Nell Hills about the circumstances surrounding the termination of Miller's employment, including Miller's repeated violations of the company's attendance policies. Miller's testimony disputed the veracity of Goss's email to Glaus, particularly the number of days that she was late to work, her attendance at weekly meetings, and her confrontation of a co-worker about a sale. Miller testified that she worked in the store after hours because her access to pricing information used to generate quotes for customers was limited to the office, and that the Nell Hills' attendance policies were not applied consistently to all employees. Miller told the appeals referee that she had another witness who would corroborate identified portions of her testimony. The appeals referee

---

[2]The record on appeal does not explain why the Appeals Tribunal failed to determine Miller's eligibility for unemployment benefits after the March 24, 2021 hearing and instead held a second telephone hearing on December 23, 2021.

3

told Miller that the additional witness would not be necessary because "I have the information that I need to make a decision here."

The Appeals Tribunal issued its decision affirming the deputy's determination on March 21, 2022 ("Appeals Tribunal's Decision"). The Appeals Tribunal's Decision concluded that Nell Hills met its burden to prove that Miller was discharged for misconduct connected with work, particularly "chronic violations of the employer's attendance policy."[3] Accordingly, the Appeals Tribunal's Decision concluded that Miller was disqualified from receiving unemployment benefits.

Miller appealed the Appeals Tribunal's Decision to the Commission. In the letter indicating her intent to appeal, Miller asserted that the Appeals Tribunal's Decision "is based on false statements . . . regarding my employment with Nell Hills," particularly Goss's email to Glaus. Miller's letter to the Commission also alleged that she was deprived of the opportunity to present witness testimony during the hearing before the appeals referee. The Commission issued its decision affirming the Appeals Tribunal's decision and adopting it as its own ("Commission's Decision").

Miller appeals.

---

[3]The Appeals Tribunal did not make any findings about whether missing required meetings, staying in the store after hours, or confronting fellow interior design sales associates in front of customers constituted misconduct associated with work.

4

## Standard of Review

With respect to appellate review of a decision by the Commission, section 288.210[4]

provides:

> The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award. An appeal shall not act as a supersedeas or stay unless the commission shall so order.

When, as here, the Commission adopts the decision of the Appeals Tribunal as its own, we consider the Appeals Tribunal's decision to be the Commission's decision for the purposes of our review. *Ekres v. Div. of Emp. Sec.*, 641 S.W.3d 411, 417 (Mo. App. W.D. 2022)

"The Commission's factual findings, 'if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive,' and our jurisdiction is confined to questions of law.'" *Id.* at 416-17 (quoting section 288.210). Whether the Commission's factual findings are supported by "competent and substantial evidence" requires us to examine the evidence in context of the whole record. *417 Pet Sitting, LLC*

---

[4]All statutory references are to RSMo 2016 as supplemented through September 13, 2020, unless otherwise indicated.

*v. Div. of Emp. Sec.*, 616 S.W.3d 350, 358 (Mo. App. W.D. 2020) (citing *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)). We view the evidence objectively and not in the light most favorable to the Commission's decision, deferring only to the Commission insofar as it made determinations "on matters of witness credibility and resolution of conflicting evidence." *Ekres*, 641 S.W.3d at 417. While we give deference to the Commission's factual findings as to witness credibility and conflicting evidence, we review the Commission's conclusions of law and the Commission's application of law to the facts *de novo*. *Id.*

## Analysis

Miller presents six points relied on. Three of Miller's points relied on assert that the Commission erred in affirming the Appeals Tribunal's Decision because proper procedures were not followed to review her claim for unemployment benefits. Another point relied on asserts that the appeals referee denied Miller a fair hearing by refusing to allow Miller to call a witness to contradict and impeach evidence offered by Nell Hills. Miller's remaining two points relied on challenge the evidentiary basis for the Commission's conclusion that Miller was fired for misconduct. We address Miller's procedural complaints first.

### *Alleged Procedural Errors (Points One, Two and Four)*

Three of Miller's points relied on challenge the Commission's affirmance and adoption of the Appeals Tribunal's Decision because procedural errors occurred during the review of her claim for unemployment benefits. Miller points to the fact that: (1) the Appeals Tribunal held a second hearing on December 23, 2021, even though neither Nell

6

Hills nor the Division appealed following the March 24, 2021 hearing as required by section 288.200 ("Point One"); (2) the transcript of the March 24, 2021 hearing was never entered into evidence during the December 23, 2021 hearing in violation of section 288.190 ("Point Two"); and (3) Nell Hills' protest of Miller's claim for unemployment benefits was not filed timely ("Point Four"). The Division argues that these points on appeal are not preserved for appellate review because Miller did not raise these complaints before the Commission.

Our review is limited to those issues that were determined by the Commission in its decision. *Sanders v. Div. of Emp. Sec.*, 660 S.W.3d 35, 42 (Mo. App. W.D. 2023) (quoting *Perry v. Tiersma*, 148 S.W.3d 833, 835 (Mo. App. S.D. 2004)). If an issue was appropriate for review by the Commission but was not raised with the Commission, then that issue cannot be litigated on appeal. *St. John's Mercy Health Sys. v. Div. of Emp. Sec.*, 273 S.W.3d 510, 516 (Mo. banc 2009). To allow litigants in unemployment proceedings to raise issues in an untimely manner would result in a more costly and lengthy process for determining eligibility for unemployment benefits. *Id.*

The Commission did not hear additional evidence, and made its determination based upon the Appeals Tribunal's record, and the letter Miller sent to the Commission to express her intent to appeal from the Appeals Tribunal's Decision. The letter Miller sent to the Commission asserted that the Appeals Tribunal's Decision was based on "false statements" made by Nell Hills that "misrepresent[], misstate[], and fail[] to disclose material facts . . . in order for [Miller] to be denied unemployment benefits." Miller's letter focused on her contentions that she was not tardy to work as often as Nell Hills

7

claimed, that Nell Hills failed to apply its attendance policy equally, and that Nell Hills' characterization of Miller's behavior toward a fellow interior design sales associate was not accurate. In addition, Miller's letter complained that the appeals referee presiding over the December 23, 2021, refused to allow Miller to call a witness to contradict statements made in Goss's email to Glaus.

Miller's letter does not specifically refer to any concern Miller had with the fact that the Appeals Tribunal held a second hearing (Point One), with the failure to include the transcript of the first Appeals Tribunal hearing in the record for the second Appeals Tribunal hearing (Point Two), or with the timeliness of Nell Hills' protest of Miller's unemployment claim (Point Four). Miller's letter to the Commission does close, however, with the following assertion: "Further, [a hearing] will prove my former employer has violated the requirements set forth for handling this case under the Missouri Unemployment Laws."

Miller's nonspecific reference to her employer's violations, even if generously construed, does not contemplate procedural mistakes made by the Appeals Tribunal in conducting a second telephone hearing, or in failing to include in its record a transcript

8

from the first hearing. The alleged procedural errors set forth in Points One[5] and Two[6] were never presented to the Commission, and are not preserved for our review. Points One and Two are denied.

The nonspecific assertion at the end of Miller's letter to the Commission can be generously construed, however, to encompass the assertion in Point Four that Nell Hills failed to timely file a protest to Miller's September 13, 2020 claim for unemployment benefits. We therefore conclude that Miller's Point Four on appeal is preserved for our review.

Section 288.070.1 provides that the claimant's base period employer or employing unit[7] has "ten calendar days after the mailing of notice of the initial claim [to] file[] a

---

[5]Even if the issue raised in Point One had been presented to the Commission for determination, Point One would have no merit because it assumes that the Appeals Tribunal determined Miller's eligibility for unemployment benefits following the March 24, 2021 hearing before an appeals referee. Section 288.200.1, the statutory provision that Miller claims was not followed, concerns only appeals from "any decision of an appeals tribunal." Since the Appeals Tribunal had not yet issued a decision, Point One would be without merit.

[6]Even if the issue raised in Point Two had been presented to the Commission for determination, Point Two would have no merit. Section 288.190.2 requires the Appeals Tribunal to include in the record and consider as evidence "all records of the [D]ivision that are material to the issues," and mandates that "[a]ll testimony at any hearing shall be recorded but need not be transcribed unless the matter is further appealed." The transcript of the March 24, 2021 hearing was not a "record[] of the [D]ivision" such that it needed to be included in the record and considered as evidence at the December 23, 2021 hearing. Instead, it was a record of the Appeals Tribunal.

Moreover, as we recognize in note 5, *supra*, the March 24, 2021 hearing was not further appealed, as it did not result in a determination. There was no statutory obligation to have a transcript from the first hearing prepared. If Miller believed that the transcript from of March 24, 2021 hearing would be helpful to her, nothing prevented her asking to have the transcript prepared so that she could offer it into evidence. Miller did not do so.

[7]"Base period" is statutorily defined as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year."

protest against the allowance of benefits." However, that time period may be extended pursuant to section 288.070.10 "for good cause." For the purposes of extending the time period for filing a protest, "good cause shall be those circumstances in which the party acted in good faith and reasonably under all the circumstances." 8 CSR 10-5.010(2)(C).

The notice of renewal of claim for unemployment benefits sent to Nell Hills indicates that it was mailed on September 22, 2020, and warns Nell Hills that any protest "must be transmitted or postmarked before midnight Central Time on" October 2, 2020. The record does not establish *when* Nell Hills filed its protest of Miller's claim for unemployment benefits, or whether Nell Hills secured an extension to file a protest for good cause. There is a presumption that decisions rendered by an administrative body are valid. *Scrivener Oil Co. v. Crider*, 304 S.W.3d 261, 272 (Mo. App. S.D. 2010). Miller, as the appellant, "carr[ies] the burden of overcoming this presumption by establishing unfairness in the procedure" utilized in an administrative proceeding, such as the determination of eligibility of unemployment benefits. *Id.* Beyond her bare assertion that Nell Hills filed its protest untimely, Miller points to no evidence in the record to support her claim. Miller has failed to meet her burden to demonstrate that the Commission erred in affirming the Appeals Tribunal's Decision.

Point Four is denied.

---

Section 288.030.1(2). "Employing unit" is statutorily defined as "any individual, organization, partnership, corporation, common paymaster, or other legal entity, including the legal representatives thereof, which has or, subsequent to June 17, 1937, had in its employ one or more individuals performing services for it within this state." Section 288.030.1(15). Nell Hills employed Miller in Missouri during the first four of the last five completed calendar quarters.

*Factual Basis of Commission's Decision (Points Five and Six)*

Miller challenges the factual basis for the Commission's Decision in two of her points on appeal. In her fifth point relied on, Miller argues that the facts found by the Commission do not support the denial of her claim for unemployment benefits because the evidence did not establish that Miller was fired for misconduct ("Point Five"). Miller's sixth point relied on is similar, asserting that Nell Hills failed to meet its burden to prove that Miller had received multiple warnings from Nell Hills prior to her dismissal from employment ("Point Six").

Section 288.050.2 disqualifies a claimant from receiving unemployment benefits if the claimant was discharged for "misconduct connected with the claimant's work." While the claimant ordinarily has the burden to establish that she is eligible for unemployment benefits, if the employer asserts that the claimant was discharged for misconduct, the burden then shifts to the employer to prove misconduct connected to work by a preponderance of the evidence. *Valley v. Div. of Emp. Sec.*, 578 S.W.3d 865, 871 (Mo. App. W.D. 2019). "We distinguish between conduct that justifies termination and misconduct that precludes benefits because '[m]isconduct, in this context, is to be construed least favorably to a forfeiture of benefits.'" *Id.* (quoting *Scott v. Div. of Emp. Sec.*, 377 S.W.3d 603, 606 (Mo. App. W.D. 2012)).

Relevant to this case, "misconduct" is statutorily defined as:

[C]onduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:

. . . .

11

(c) A violation of an employer's no-call, no-show policy; chronic absenteeism or tardiness in violation of a known policy of the employer; or two or more unapproved absences following a written reprimand or warning relating to an unapproved absence unless such absences are protected by law . . . .

Section 288.030.1(23). In affirming and adopting the Appeals Tribunal's Decision as its own, the Commission concluded that Miller was discharged from Nell Hills on September 10, 2020, for misconduct connected to work, particularly "chronic violations of the employer's attendance policy." "[E]mployers do not have a heavy burden to prove that an employee committed attendance-related misconduct." *Reliford v. Div. of Emp. Sec.*, 613 S.W.3d 82, 86 (Mo. App. W.D. 2020) (quoting *Ausley v. CCL Label (St. Louis), Inc.*, 513 S.W.3d 390, 395 (Mo. App. E.D. 2017)). Misconduct related to chronic absenteeism or tardiness requires only that the employee have knowledge of the attendance policy which she has violated. *Id.*

The Commission found that Nell Hill's evidence that Miller "received multiple verbal warnings in regards to the claimant's attendance and tardiness during [her] employment" was credible, and that Miller was "chronically tardy in violation of a known policy of the employer." Competent and substantial evidence supports these factual findings and the legal conclusion that Nell Hills discharged Miller for misconduct connected to work.

At the December 23, 2021 hearing, the appeals referee acknowledged the Division's documentation related to Miller's claim for unemployment and admitted the documentation into evidence as an exhibit. Included in the Division's documentation was an email that Goss sent Glaus on October 16, 2020, thirty-six days after Goss informed

12

Miller that her employment with Nell Hills was terminated on September 10, 2020.[8]  This email indicated that Miller was late twenty-four out of forty-six working days, and that Miller missed four meetings she was required to attend.  Goss's email explained that Miller was terminated at the end of the work day September 10, 2020, because she was tardy to work yet again.  Glaus testified at the hearing on behalf of Nell Hills.  Glaus explained that Miller's employment was terminated for failing to follow Nell Hill's written attendance policy, which Miller had acknowledged in writing, in that Miller was late to work twenty-four days.  Glaus testified that, prior to her discharge from employment, Miller had been warned about arriving late to work.

During her testimony at the March 24, 2021 and December 23, 2021 hearings, Miller admitted that she was aware of Nell Hills' attendance policy and that she had been warned about arriving late to work before being discharged from her employment on September 10, 2020.  Miller complained, however, that Nell Hills did not apply its attendance policy equally to all employees.  Miller testified that she corrected her tardiness after being warned that she needed to show up to work on time, and only arrived late to work one time thereafter due to a traffic jam.  Miller also disputed the number of times she was alleged to have been late, and claimed that she would clock in after mandatory morning meetings, causing her to timesheet to show that she was tardy

---

[8] 8 CSR 10-5.015(1)(B)(4) provides that "[h]earsay evidence is generally admissible," although if timely objected to, "hearsay evidence "shall not constitute competent evidence which, by itself will support a finding of fact."  No timely objection is shown in the record to admission of the email Goss sent to Glaus, and Miller raises no issue on appeal regarding admission of the email into the record considered by the Division, the Appeals tribunal, or the Commission.

even though she was not. Finally, Miller contested missing four mandatory meetings, and asserted that three of these meetings never occurred.

In Points Five and Six, Miller relies entirely on her own testimony to assert that the Commission's finding of misconduct was not supported by competent and substantial evidence on the record. Miller's argument does not comport with our standard of review. While we do not view the evidence in the light most favorable to the Commission's Decision, we do defer to the Commission insofar as it made witness credibility determinations and resolved conflicting evidence. *Ekres*, 641 S.W.3d at 417. Here, the Commission was presented with competing accounts of Miller's compliance with Nell Hills attendance policy. The Commission, by affirming and adopting the Appeals Tribunal's Decision as its own, resolved that contradiction in the evidence by finding that the employer provided "credible testimony," and by finding that Nell Hills discharged Miller after she received multiple warnings about her attendance and tardiness but still arrived late to work on September 10, 2020. We defer to those factual findings.

Those factual findings support the Commission's conclusion that Miller was discharged for misconduct connected with work in that she was chronically tardy in violation of a known policy of Nell Hills. There was no dispute that Miller knew about Nell Hills' attendance policy and that Miller had been warned about complying with the attendance policy. While Miller's testimony about the number of times she was tardy to work contradicted Nell Hills' evidence, the Commission found Nell Hills' evidence more credible and found that Miller continued to violate the attendance policy even after she was warned to arrive to work on time. The Commission's conclusion that Miller was

14

discharged for misconduct connected to work, specifically chronic absenteeism or tardiness in violation of a known policy, is supported by competent and substantial evidence on the record.

Points Five and Six are denied.

***The Appeals Referee's Refusal to Allow Miller to Call a Witness (Point Three)***

Miller's third point on appeal generally asserts that the Commission committed error in affirming the Appeals Tribunal's Decision because the appeals referee refused to allow Miller to call a witness to contradict and impeach Nell Hills' evidence. In Miller's letter to the Commission indicating her intent to appeal the Appeals Tribunal's Decision, Miller asserted that "time constraints did not allow for my witness to speak on my behalf" to support Miller's testimony about whether Nell Hills consistently applied its policies regarding employee attendance, and about whether some of the meetings Miller was alleged to have missed had even occurred. Miller's third point on appeal is preserved with respect only to these subjects.

Section 288.190.2 provides that "[t]he manner in which disputed [unemployment] determinations . . . shall be presented and the conduct of hearings shall be in accordance with regulations prescribed by the [D]ivision for determining the rights of the parties, whether or not such regulations conform to common law or statutory rules of evidence and other technical rules of procedure." The relevant regulatory provision regarding evidence presented during hearings before an appeals referee provides:

> [E]ach party has the right to call and examine witnesses, to introduce exhibits, to cross-examine opposing witnesses on any matter relevant to the issues even though that matter was not a subject of the direct examination,

15

to impeach any witness, regardless of which party first called the witness to testify, and to rebut the evidence against him/her . . . .

8 CSR 10-5.015(10)(B)2. However, the right to present witness testimony is tempered by 8 CSR 10-5.015(10)(B)4, which provides that evidence is admissible only "if it is not irrelevant, immaterial, privileged, or unduly repetitious." The appeals referee is tasked with making rulings on the admissibility of all evidence. 8 CSR 10-5.015(10)(B)4.

At the beginning of the December 23, 2021 hearing, Miller told the appeals referee that she had a witness who "might be available" to provide testimony that would "back up" Miller's positions on appeal, particularly Miller's assertions that some of the four meetings Nell Hills alleged she had missed had never occurred, and that Nell Hills' attendance policies were not applied consistently. The appeals referee asked Miller whether the witness's testimony was "something that you will not be able to cover with your own testimony." Miller stated that she could "cover it" in her testimony, and that witness testimony would "corroborate" Miller's testimony. The appeals referee told Miller that the witness would be permitted to testify if the referee believed the testimony to be necessary. After Miller's testimony was concluded, the appeals referee ruled that the other witness's corroboration testimony was not necessary because Miller's testimony was sufficient to allow the Appeals Tribunal to determine Miller's eligibility for unemployment benefits.

It is within the appeals referee's discretion to admit or exclude evidence, and the exercise of this discretion that will not be overturned absent an abuse of discretion. 8 CSR 10-5.015(10)(B)4; *Hubbell Mech. Supply Co. v. Lindley*, 351 S.W.3d 799, 810 (Mo.

16

App. S.D. 2011). As the party alleging her hearing was unfair, Miller bears the burden to overcome the presumption of fairness. *Scrivener Oil Co.*, 304 S.W.3d at 272.

The excluded witness testimony would have been repetitive of Miller's testimony contesting whether all of the meetings Miller allegedly failed to attend had even occurred, and whether Nell Hills' attendance policy was consistently applied. On that basis alone, we cannot find that Miller has sustained her burden to establish that the appeals referee abused its discretion in refusing to permit repetitive testimony, resulting in an unfair hearing.

Moreover, the Appeals Tribunal found that Nell Hills met its burden to establish that Miller was discharged for misconduct connected with work due to "chronic violations of the employer's attendance policy." The exclusion of witness testimony offered to corroborate Miller's testimony that the number of meetings Miller allegedly missed was overstated could not have been an abuse of discretion resulting in an unfair hearing as Miller's failure to attend required meetings was not the basis for finding that Miller was discharged for misconduct connected with work. Even if missing required meetings were a factor in finding that Miller was chronically absent, Miller has not demonstrated that the number of missed meetings she contested would have been sufficient to prevent her admitted absenteeism and tardiness from being properly viewed as chronic.

Finally, though in her letter to the Commission expressing the desire to appeal, Miller also claimed that the excluded witness testimony would have corroborated her

contention that Nell Hills' attendance policy was not consistently applied, that contention is not addressed in Miller's brief on appeal. The contention is abandoned.

Because Miller has not sustained her burden to establish that the appeals referee abused his discretion in refusing to permit Miller's witness from testifying, the Commission did not err in affirming and adopting the Appeals Tribunal's Decision as its own.

Point Three is denied.

## Conclusion

The Commission's Decision is affirmed.

_____
Cynthia L. Martin, Judge

All concur